Olive Ida Burke, Appellee, v. Isaac Kleiman et al., Appellants.

Gen. No. 37,522.

520

Opinion filed November 27, 1934.

CHARLES J. SOPKIN, for appellants.

H. E. RAYMOND and CHARLES A. CHURAN, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Appellee filed her bill setting out that her predecessor in title, in common with nearly 500 white persons, in the locality described in the bill, who were either owners of or predecessors in title to the premises owned by appellee and those owned by appellants, entered into a restrictive agreement as to the use of the property described therein, including the property of appellee and of appellants. The agreement was made September 30, 1927, and was to expire January 1, 1948. The restrictive covenant contained therein provided against leasing or selling any of the premises included in the agreement to any person or persons of the colored race, and that no part of the premises should be used or occupied by such excluded persons other than as janitors, chauffeurs or servants. The bill complains that appellants have leased the premises described in the bill, situated near appellee's property, in violation of the agreement, by leasing an apartment to appel-

lant James L. Hall, a negro. The bill prays that appellants be restrained from so leasing or selling such property or otherwise disposing of it to persons of the negro race as defined in the agreement. It also seeks a mandatory injunction requiring that appellants cause to be removed all persons coming within the description of the restrictive covenant. Appellants, in their separate answers filed to the bill, set up the defense that since the restrictive agreement was signed conditions have so changed in the restricted area that the granting of the injunction would be inequitable and a hardship upon appellants. The cause was submitted to the chancellor upon an agreed statement of facts. A decree was entered granting the relief prayed and appellants appealed to the Supreme Court. That court (see *Burke v. Kleiman,* 355 Ill. 390) held that there is no freehold involved in the case, and transferred the cause to this court.

Sometime after the cause had been docketed in this court, appellee filed a motion to dismiss the appeal, upon the ground that the four appellants had prayed for a joint appeal and that only two of them had signed the appeal bond. The motion to dismiss the appeal will be denied for the following reasons: When the appeal was docketed in the Supreme Court appellee filed a general appearance and a lengthy brief upon the merits, in which the question of jurisdiction is not raised nor suggested. After the cause was remanded appellee entered a general appearance in this court and thereafter entered a motion for a rule on appellants to pay to the clerk a docketing fee immediately or that the appeal be dismissed. The ground urged by appellee in support of that motion was that she was deprived of the benefits of the mandatory injunction by the failure of appellants to have the cause docketed. Appellee, by failure to indicate an intention to do otherwise, has adopted for consideration by this court

her brief filed in the Supreme Court. By her conduct appellee has waived the question of jurisdiction. (See *Davison v. Heinrich,* 340 Ill. 349; *People v. Southern Gem Co.,* 332 Ill. 370; *In re Estate of Boening,* 274 Ill. App. 434, 439.)

The parties to this suit entered into the following stipulation of facts:

"That the parties hereto, by their respective solicitors, have agreed upon the facts involved in this proceeding this 10th day of May, 1933, as hereinafter set forth and desire to have the court render its decision herein upon said facts so agreed upon, which facts are as follows: . . .

"2. That, on to-wit: the 30th day of September, 1927, about five hundred or over white persons duly executed and entered into a Restrictive Agreement described in the Bill of Complaint herein, said white persons constituting and comprising of more than ninety five per cent (95%) of then owners of said frontage described in said Agreement, a copy of which is herein set forth, which Agreement with respect to recordation and execution thereof was fully completed within the time set forth, and was on February 1, 1928 recorded in the Recorder's Office of the Recorder of Deeds of Cook County, Illinois in Book # 25525 of Records, on Page # 5 as Document No. 9914711, except however, signatures and notarizations on and to said agreement were recorded in said office on said date as other parts of said document, Document numbers 9914–712, 9914–713, 9914–714 respectively; said agreement above referred to being in words and figures set forth as follows:

" 'This Agreement entered into this 30th day of September, 1927, by and between the undersigned owners of land on the one or the other side of Evans, Langley, Champlain, St. Lawrence, Rhodes, Eberhart, Vernon and South Park Avenue between 60th and 63rd

Streets and on 60th, 61st and 62nd Streets between South Park and Cottage Grove Avenues, in the City of Chicago, witnesseth, that,

" 'AND, WHEREAS, the parties hereto feel that the restrictions and covenants hereinafter imposed and created are for the best interests of all the parties hereto and of the property hereinafter described.

" 'IN CONSIDERATION of the premises and of the mutual covenants hereinafter made, and of the sum of Five Dollars ($5.00) in hand paid to each of the parties hereto by each of the other parties hereto, the receipt of which is hereby acknowledged, each party an owner of the parcel of land above described immediately under his name, does hereby covenant and agree with each and every other of the parties hereto, that his said parcel of land is now and until January 1, 1948, and thereafter until this agreement shall be abrogated as hereinafter provided, shall be subject to the restrictions and provisions hereinafter set forth, and that he will make no sale, contract of sale, conveyance, lease or agreement and give no license or permission in violation of such restrictions or provisions, which are as follows:

" '1. The restriction that no part of said premises shall in any manner be used or occupied directly or indirectly by any negro or negroes, provided that this restriction shall not prevent the occupation, during the period of their employment, or janitors' or chauffeurs' quarters in the basement or in a barn or garage in the rear, or of servants' quarters by negro janitors, chauffeurs or house servants, respectively, actually employed as such for service in and about the premises by the rightful owner or occupant of said premises.

" '2. The restriction that no part of said premises shall be sold, given, conveyed or leased to any negro or negroes, and no permission or license to use or occupy any part thereof shall be given to any negro ex-

cept house servants or janitors or chauffeurs employed thereon as aforesaid.

" 'The covenants, restrictions and agreements herein contained shall be considered as appurtenants to and running with the land and shall be binding upon and for the benefit of each party hereto and may be enforced by any of the parties hereto by any permissible legal or equitable proceedings, including proceedings to enjoin violation and for specific performance; provided, however, that in any action brought to set aside any deed made in violation of any of the provisions of this agreement, it shall be a good defense thereto that prior to the institution of each suit, the title to the premises then in question had become vested in, and was then owned by a corporation or a white person, for value; and provided, further, that the lien of no mortgage or trust deed in the nature of a mortgage shall be impaired or invalidated by reason of the breach of any of the provisions of this agreement, whether any such breach shall have occurred prior or subsequent to the recording of any such mortgage or trust deed; and provided, further, that nothing contained in the foregoing provisos shall in any manner impair the right of any person or persons interested to enforce at all times and against all persons the restrictions in this agreement contained prohibiting the use or occupation of all or any sort of said premises by a negro or negroes.

" 'This agreement and the restrictions herein contained shall be of no force or effect unless this agreement or a substantially similar agreement, shall be signed by the owners above enumerated of ninety five per cent of the frontage above described, or their heirs or assigns, and recorded in the office of the Recorder of Deeds of Cook County, Illinois, on or before December 31, 1928. Provided, however, that if the owner of any of said parcels or of any part thereof shall be

under disability as, for example, when the title is held, without much power, by testamentary trustees or other fiduciaries, the frontage so owned shall be treated as though the owners thereof had power to sign, and has signed this agreement, for the reason of determining whether this agreement becomes effective or not under the provisions of this paragraph.

" 'It is understood for convenience a number of counterpart or concurrent instruments have been prepared of even date herewith, the test of each of which is substantially the same as that of this instrument, and that the execution of any one of such instruments shall have the same effect as the execution of this instrument by the same person would have, and it is understood that parties to this agreement shall include not only those persons who shall sign this instrument but also all persons who shall sign any of said counterpart or concurrent instruments and that this instrument and all of said counterpart or concurrent instruments shall constitute one agreement. It being contemplated that changes in ownership may occur between the date which this instrument bears and that date when it shall become effective, or that there may possibly be some misrecital of ownership herein contained, it is further understood that the execution hereof by the person who shall be the owner of any of said parcels of land at the time of such execution shall have the same effect as though such person had been the owner thereof on the date hereof and was so described herein, whether the recital of ownership herein contained be made to conform to the facts at the time of execution or not. And if, in order to conform to the facts as to ownership at the time of execution, the recital of ownership in said instruments shall be made different from that contained in the others, that difference shall not prevent all of such instruments from being construed to be substantially similar to each other.

" 'No restrictions imposed hereby shall be abrogated or waived by any failure to enforce the provisions hereof no matter how many violations or breaches may occur.

" 'This agreement and the restrictions herein expressed may be abrogated at any time on or after January 1, 1948, by the written agreement of the owners of seventy-five per centum of the frontage owned by the parties who shall sign this agreement, as herein set forth, such abrogation to be effective from and after the date of delivery and recording of such written agreement. Provided, however, that if the owner of any of said parcels or any part thereof shall be under disability, as for example, that of minority, or for any other reason shall not have the power to execute such abrogation agreement, as for example, when the title is held without such power, by testamentary trustee or other fiduciaries, the frontage so owned shall be treated as though the owners thereof had power to sign, and had signed, such abrogation agreement, for the purpose of determining whether such abrogation agreement becomes effective or not under the provisions of this paragraph.

" 'The invalidity of any restriction hereby imposed, or of any provision hereof, or of any part of any such restriction or provisions shall not impair or affect in any manner the validity, enforceability or effect of the rest of this agreement.

" 'Pronouns herein employed in the masculine gender shall be construed to include the feminine and neuter genders, and the word ''party'' or ''person'' to include natural and artificial parties or persons.

" 'The term ''negro'' as used herein shall include every person having one-eighth part or more of negro blood, or having any appreciable admixture of negro blood, and every person who is what is commonly known as a colored person.

" 'In any case where there is a recorded lease of any parcel of the property described herein for a term ending more than five years after any given date the owner of the reversion and the owner of the leasehold estate together shall be deemed to be the owners of such parcel on such given date within the meaning of this contract, and whenever the signature of the owner of such parcel shall be required on such given date under the provisions, whatever interest any signer of this instrument owns in any of said property shall be bound by the provisions hereof. Leases under unrecorded leases on any given date and under leases for terms ending less than five years after such given date shall not be regarded as owners within the meaning of this contract.

" 'The undersigned spouses of owners of land herein described join herein for the purpose of signifying their assent hereto and of subjecting their rights of dower, if any, to the restrictions and provisions imposed hereby.

" 'Time is of the essence of this contract and all the terms, conditions and provisions hereof.

" 'The covenants, restrictions and agreements herein contained shall be binding on, and for the benefit of, and may be enforced by and against, each party hereto, his successors and assigns, and the heirs, executors, administrators and successors of them respectively.

" 'In Witness Whereof, the parties hereto have hereunto set their hands and seals the day and year first aforesaid.'

"3. That complainant is now and was at the time of the filing of her said Bill of Complaint, an actual resident of the County of Cook and State of Illinois for more than one year immediately preceding the filing of her said Bill of Complaint.

"4. That among the signatures of said Agreement was one Hannah Studdert, the owner at the time of the

execution of said Agreement of the parcel of land owned at the time of the filing of the Bill of Complaint and now owned by complainant, described as, to-wit: (here follows legal description) which real estate is improved with a two apartment building of great value and so identified, designated and described in said Agreement as Parcel # 498; that title thereto and ownership came to complainant from Hannah Studdert by Mesne Conveyances.

"5. That among said signers of said Agreement was also Ben Piser, the owner at the time of execution of said Agreement of the parcel of land owned at the time of the filing of Bill of Complaint herein and now owned by the defendant, Isaac Kleiman, who became the owner therein by Mesne Conveyances and legally described as, to-wit: (here follows legal description) and designated and described in said Agreement as Parcel # 472, which is improved with a three story brick apartment building.

"6. That the defendant, Sam Kleiman, is the owner and holder of a first lien of mortgage on the aforementioned real estate to secure the payment of a note in the amount of Ten Thousand Dollars ($10,000.00); that the defendant, Charles J. Sopkin is mentioned as Trustee in said lien or mortgage.

"7. That the defendant, Jas. L. Hall is a person of negro race as defined in said Restrictive Agreement and did move into and became a tenant in said premises lastly above described on the 18th day of October, 1932.

"8. That the defendants, Sam Kleiman and Isaac Kleiman did rent said apartment to the said Jas. L. Hall on, to-wit: the 18th day of October, 1932, prior to the filing of the said Bill of Complaint, and that the said Jas. L. Hall is a negro under terms of said agreement.

"9. That all of the defendants, and each of them had full knowledge and notice of the contents and terms of said Agreement, and that the said Jas. L. Hall had full knowledge and notice at the time he became a tenant therein and is still a tenant in said premises.

"10. That the real property in said agreement comprised an area extending from south side of 60th Street south to north side of 63rd Street inclusive being a distance of three blocks inclusive, and from west side of Cottage Grove Avenue west to west side of South Park Avenue inclusive, being a distance of nine blocks inclusive; that the frontage on the west side of South Park Avenue is the west boundary line of said area, all in City of Chicago, County of Cook and State of Illinois.

"11. That there were at the time and prior to the filing of the Bill of Complaint herein, three other properties within the terms of said Agreement having negro tenants, which properties are as follows:

"(a) A hotel located at 6014 South Park Avenue having sixty (60) colored tenants and being a distance of about 650 feet from complainant's property and 350 feet from the property of the defendant, Isaac Kleiman, and within said area, and a party to said agreement by Mesne Conveyances. Bill for injunction filed since the filing of the Bill of Complaint herein, and the same is pending.

"(b) The southeast corner of 60th Street and South Park Avenue containing twenty four (24) negro tenants and having a frontage of 50 feet on 60th Street and 125 feet on South Park Avenue, being a distance of 425 feet from the complainant's property and 75 feet from the defendant, Sam Kleiman's property, a party to said agreement by Mesne Conveyances. Petition having been filed to make the Receiver in possession a party to a Bill for Injunction said petition having been denied.

"(c) The southwest corner of 60th Street and South Park Avenue, containing twelve (12) negro tenants, being a frontage of 50 feet on South Park Avenue and 125 feet on 60th Street and being a distance of 531 feet from the complainant's property and 231 feet from the property of the defendant, Isaac Kleiman, a party to said agreement by Mesne Conveyances.

"All of said properties being within the said restricted area; that complainant's property is located on the east side of Evans Avenue at 6030 as aforesaid; that the distance by sidewalk to the nearest negro tenant prior to that is the property of the defendant, Isaac Kleiman, is five hundred feet; that is to say to the property located at the southeast corner of 60th Street and South Park Avenue, as aforesaid.

"12. That the Restrictive Agreement aforesaid comprises 583 parcels ranging from a frontage of 25 feet to 100 feet each.

"13. That all the property mentioned in said Agreement with the exception of three parcels so described as aforesaid, were prior to the filing of the Bill of Complaint herein occupied by white tenants and that the complainant's and defendants' properties are both within said area so described in said Restrictive Agreement.

"14. That the real estate so described in said Restrictive Agreement are all improved with buildings ranging from two to thirty-two apartments; that there are white tenants on the street on which the defendant, Isaac Kleiman's property is located, with the exception of the colored tenants occupying the premises commonly known as the southeast and southwest corners of 60th Street and South Park Avenue facing both 60th Street and South Park Avenue, which are more fully above described; that the contention of the complainant is that unless an injunction is granted, said neigh-

borhood will become mixed, both white and colored with its attendant evils.

"15. . . ."

Appellants contend that "since the execution by the various parties thereto of the restrictive agreement, hereinbefore referred to, the agreed statement of facts shows that the conditions of the restricted area had so changed since said agreement was executed, as herein set forth, that said restrictive agreement is no longer operative," and the injunction should, therefore, have been denied. Appellants rely upon such cases as *Ewertsen v. Gerstenberg,* 186 Ill. 344; and *Kneip v. Schroeder,* 255 Ill. 621, which follow the general rule that where the property involved has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant the relief asked would be a great hardship on the owner and of no benefit to complainant, equity will refuse to intervene in complainant's behalf. In *O'Neill v. Wolf,* 338 Ill. 508, 526, the court stated that there could be no question as to the soundness of the rule followed in the *Ewertsen* and *Kneip* cases "wherever the circumstances of a case are such as to make it applicable." In the *O'Neill* case the court quotes with approval from *Morrow v. Hasselman,* 69 N. J. Eq. 612 (p. 524):

" ', . . . The materiality of the violation is to be determined by the circumstances of each case, and the question seems to be whether they are such as to indicate an abandonment of the original general plan and make its enforcement inequitable because of the changed condition of the property under restriction. . . .' "

The *O'Neill* case also holds that the materiality of the violation is to be determined by the circumstances of each case, and the question is whether the violations

are such as to indicate an abandonment of the original general plan and to make its enforcement inequitable because of the changed condition of the property under restriction, and the court cites *Star Brewery Co. v. Primas,* 163 Ill. 652, as an authority that "the character and condition of the adjoining property must have been so changed as to render the building restriction inapplicable according to the intent and spirit of the contract." In *Moore v. Curry,* 176 Mich. 456, 464, the court states that the change in the environments and character of the neighborhood must be radical. The restrictive agreement in the instant case covered 583 parcels of real estate. It was signed by over 500 white persons, owners of property in the city of Chicago, that covered nine city blocks from east to west and three blocks from north to south. The property is bounded by Cottage Grove avenue on the east, South Park avenue on the west, 60th street on the north, and 63rd street on the south. It is improved with dwellings, apartment buildings, and flat-buildings. At the time of the filing of the bill there had been but three violations of the restrictive agreement as to negro occupation. The record does not show how long these violations existed, but, as complainant argues, it is reasonable to presume that if they had existed for a considerable period of time appellants would have submitted proof of that fact. As to the three violations, it is agreed that a bill for injunction was filed and is still pending against the owner of the hotel on the west side of South Park avenue; that as to the violation by the owner of the property on the southeast corner of 60th street and South Park avenue, a petition was filed to make the receiver in possession a party to a bill for an injunction, and that the petition was denied. No evidence was introduced to show any change in the character of the neighborhood, save as to the four violations, since the restrictive agreement went into ef-

fect. The cases cited by appellants may be readily distinguished upon the facts. The instant contention of appellants is, in our judgment, without merit.

The only other contention raised by appellants is that "the complainant waived her right to an injunction" by not acting "within a reasonable time, to enjoin violations of the restrictive agreement, but sat by and allowed the condition of the neighborhood to change from a white neighborhood to a mixed neighborhood, but did nothing towards enjoining it." We find no merit in the instant contention. Two cases are cited in support of this contention, *Teagan v. Keywell,* 212 Mich. 649, and *Ocean City Ass'n v. Chalfant,* 65 N. J. Eq. 156. In the *Teagan* case it appeared that all of the residents of a subdivision except one violated the restrictive covenant in the deed against building on the 50-foot area from the front lot line, and plaintiffs themselves violated it and sat by and saw others violate it without protest. In the *Ocean City Ass'n* case it appeared that a vendor sold off an estate in lots, with restrictions upon the use of the lots sold, and it was held that he lost his right in equity to enforce the restrictions against one grantee because he had knowingly permitted other grantees to violate the same restrictions, the effect of which violations was to abrogate the purpose of the restriction and to alter the general scheme intended to be conserved by it. *O'Neill v. Wolf, supra,* lays down the rule to be followed in this State. The argument of appellants that because three or four of the signers, representing only three or four parcels of land out of 583 parcels, violated the restrictive agreement, this created such a change in the character of the neighborhood as to warrant a presumption of abandonment of the agreement, is not supported by the authorities.

Appellants have not contended that the restrictions violate any of the amendments to the United States

constitution, nor that they are against public policy, but complainant has seen fit to argue, at some length, that the restrictions do not violate the fifth, thirteenth or fourteenth amendments to the United States constitution and that they are not against public policy. While it is entirely unnecessary, because of appellants' attitude, for us to consider this argument, we may state that the following authorities cited in support of it sustain the position of complainant: *Corrigan v. Buckley,* 299 Fed. 899; *Corrigan v. Buckley,* 271 U. S. 323; *Parmalee v. Morris,* 218 Mich. 625; *Queensborough Land Co. v. Cazeaux,* 136 La. 724; *Los Angeles Investment Co. v. Gary,* 181 Cal. 680; *Koehler v. Rowland,* 275 Mo. 573. Complainant also cites *People v. Forest Park Cemetery Co.,* 258 Ill. 36, wherein the court held that the refusal of a cemetery corporation to sell a lot to a colored person and admit the body of his wife for burial, solely upon the ground of his color, is not a violation of the rights of such person under the constitution of this State, nor under the fourteenth amendment to the Federal constitution, which applies only to acts of the State. In spite of the instant argument of complainant, appellants have not seen fit to file a reply brief.

The decree of the superior court of Cook county is affirmed.

*Affirmed.*

GRIDLEY, P. J., and SULLIVAN, J., concur.