(No. 25116.—

ANNA M. LEE *et al.* Appellees, *vs.* CARL A. HANSBERRY *et al.* Appellants.

*Opinion filed October. 10, 1939—Rehearing denied Dec. 13, 1939.*

370

Shaw ·and Murphy, JJ., dissenting.

Earl B. Dickerson, Truman K. Gibson, Jr., C. Francis Stradford, Loring B. Moore, and Irvin C. Mollison, · for appellants.

Charles A. Churan, Schuyler & Hennessy, and Angus Roy Shannon, for appellees.

Mr. Justice Jones delivered the opinion of the court:

Plaintiffs (appellees here) brought an action in the circuit court of Cook county for the purpose of enforcing a certain "restrictive agreement" concerning the real estate of approximately five hundred owners in the city of Chicago. The substance of this agreement, set forth *in haec verba* in *Burke* v. *Kleiman,* 277 Ill. App. 519, was that no part of the property restricted should be sold, leased to, or permitted to be occupied by any person of the colored race prior to January 1, 1948. The property covered by the agreement consists of approximately twenty-seven blocks and parts of blocks between Sixtieth and Sixty-third streets, and between Cottage Grove and South Park avenues in Chicago. The agreement contained the following provision: "This

agreement and the restrictions herein contained shall be of no force or effect unless this agreement or a substantially similar agreement, shall be signed by the owners above enumerated of ninety-five per centum of the frontage above described, or their heirs or assigns, and recorded in the office of the Recorder of Deeds of Cook county, Illinois, on or before December 31st, 1928."

The complaint alleged that the owners of ninety-five per cent of the frontage signed the agreement, and that it was recorded February 1, 1928. It further alleged a conspiracy on the part of the defendants to destroy the agreement by selling or leasing property in the restricted area to negroes. It charged that Eva Somermon, one of the signers of the agreement, conveyed her property to one Stoltz, who, on the same day, conveyed it to the First National Bank of Englewood; that, through fraudulent concealment on the part of defendants James J. Burke and Harry A. Pace, from the bank, of the fact Hansberry was a negro and that the property was being purchased for him, a deed was procured from the bank to Jay B. Crook who, in fact, purchased for Hansberry; that the deed from the bank to Crook was not delivered until May 26, 1937, but that on May 19, 1937, Crook and his wife executed and delivered a trust deed to the Chicago Title and Trust Company, as trustee, to secure their note for $4400 payable to defendant the Supreme Liberty Life Insurance Company, of which defendant, Pace, a colored attorney, was president. May 26, 1937, the day the deed was delivered, Hansberry and his family moved into the premises.

The answer of defendants denied that the owners of ninety-five per cent of the frontage described in the restrictive agreement had signed the agreement, and asserted the agreement never went into effect. It also denied the principal allegations of the complaint and set up several affirmative defenses. To the defense that the agreement was never executed plaintiffs replied that that question was

*res judicata,* having been determined in *Burke* v. *Kleiman, supra,* and in other cases in the circuit and superior courts of Cook county. The chancellor reserved his ruling on the plea of *res judicata* and the cause proceeded to a hearing on the merits. At the close of the evidence the court found that the owners of only about fifty-four per cent of the frontage had signed the agreement, but held the question of execution was *res judicata.* A decree was entered in conformity with the prayer of the complaint, restraining defendant Burke from selling or leasing any real estate within the restricted area to negroes, or to white persons for the purpose of selling or leasing to negroes; restraining defendant Katz from selling or leasing a certain described building to negroes; restraining defendants Pace and the Supreme Liberty Life Insurance Company from making any further loans on real estate in the restricted area to negroes or for occupancy by negroes; declaring the conveyance to Hansberry and wife void and ordering them to remove from the premises, and holding the restrictive agreement valid and in full force and effect. Inasmuch as a freehold is involved, defendants have appealed directly to this court.

In order to decide whether the question of due execution is *res judicata,* it will be necessary to examine the case of *Burke* v. *Kleiman, supra.* That was a suit to enforce this same agreement. Olive Ida Burke, wife of James J. Burke, a defendant in the case at bar, was plaintiff. The complaint recited that she filed it "on behalf of herself and on behalf of all other property owners in the district covered and affected by the agreement hereinafter mentioned, and who are, or whose grantors, direct or otherwise, were parties to said indenture of agreement, and whose property interests will be adversely and injuriously affected by the violation hereinafter mentioned by the said defendants of the covenants and terms of said agreement." The defendants were Isaac Kleiman, the white owner, Sam Kleiman, James L. Hall, a negro tenant, and Charles J. Sopkin, trus-

tee of a trust deed on the property. The complaint alleged the agreement was signed by the owners of ninety-five per cent of the frontage and duly recorded February 1, 1928. A stipulation was entered into to this effect. The court recited the stipulation in its decree and found that the facts stipulated were true. The court further found "that said indenture was in full force and effect on February 1, 1928, and all conditions therein contained with respect to execution and recordation thereof were fully complied with;" that "all terms of said indenture agreement are entirely valid and binding," and that it is a covenant running with the land. This decree was affirmed by the Appellate Court.

It thus appears that *Burke* v. *Kleiman, supra,* was a class or representative suit. It cannot be seriously contended that it was not properly a representative suit. There was a class of individuals who had common rights and who needed protection. They were so numerous it would have imposed an unreasonable hardship and burden on them to require all members to be made parties to the suit. Under such circumstances we have repeatedly held that a court of equity has jurisdiction of representative suits, and where the remedy is pursued by a plaintiff who has the right to represent the class to which he belongs, other members of the class are bound by the results in the case unless it is reversed or set aside on direct proceedings. *Groves* v. *Farmers State Bank,* 368 Ill. 35; *Leonard* v. *Bye,* 361 id. 185; *Greenberg* v. *City of Chicago,* 256 id. 213.

Appellants contend the doctrine is inapplicable here for the reason there was no class, since the evidence shows the requirement that the owners of ninety-five per cent of the frontage sign the agreement, was not met. This argument loses sight of the fact that in *Burke* v. *Kleiman, supra,* the court had jurisdiction to determine whether or not that condition precedent had been complied with. The mere fact that it later appears that the finding is untrue does not render the decree any the less binding. The principle of

*res judicata* covers wrong as well as right decisions, for the fundamental reason that there must be an end of litigation. A matter which has once been determined by a court of competent jurisdiction cannot, in a later 'suit involving the same subject matter and the same parties or members of the same class, be again inquired into.

We see no merit in the contention that *Burke* v. *Kleiman, supra,* is not *res judicata* because the fact of due execution was established by stipulation. There is no evidence of fraud or collusion in that case. Defendant Burke, who was beneficial owner of plaintiff's property, avers in his answer here that that suit was instituted at the instance of the Woodlawn Property Owners Association, whose purpose was the enforcement of the restrictive agreement. That may be true, but there is no showing of fraud or collusion in procuring that stipulation, or that there was not an actual controversy in the case. At that time Burke was an officer of the Woodlawn Property Owners Association. Afterwards he resigned his position and withdrew from the association with ill feelings, and stated several times that he would put negroes in every block of that property. In carrying out his threat, he falsely represented that prospective customers were white. As far as the record shows, if any fraud was committed, it was by Burke after he left the association. It does not appear that he was not acting in good faith in *Burke* v. *Kleiman, supra.*

In our opinion the questions of execution and validity of the restrictive agreement are *res judicata.* The reasons assigned, in addition to those urged in *Burke* v. *Kleiman, supra,* for holding the agreement invalid cannot be considered. It is well settled that the doctrine of *res judicata* extends not only to matters actually determined in the former suit, but also embraces all grounds of recovery and defense involved and which might have been raised. By assigning new reasons for holding the agreement invalid, which existed at the time that decision was rendered, the parties cannot relitigate the question settled by the prior decree.

*In re Northwestern University,* 206 Ill. 64; *Midlinsky* v. *Rubin,* 341 id. 378; *People* v. *Wade,* 351 id. 484; *Webb* v. *Gilbert,* 357 id. 340.

The evidence fully justifies the finding of the chancellor that the charges of the complaint were established, and appellants do not argue to the contrary, except as to Israel Katz. There was testimony that he said he would sell his property to anybody, including negroes. This is sufficient evidence to warrant enjoining him from doing that which he is bound by the restrictive agreement not to do.

Appellants contend it was error to restrain the Supreme Liberty Life Insurance Company from making loans in the restricted area to negroes or for negro occupancy, for the reason mortgagees were expressly exempted from the operation of the restrictive agreement. The provision relied on is "and provided, further, that the lien of no mortgage or trust deed in the nature of a mortgage shall be impaired or invalidated by reason of the breach of any of the provisions of this agreement, whether any such breach shall have occurred prior or subsequent to the recording of any such mortgage or trust deed." The next clause is "and provided, further, that nothing contained in the foregoing provisions shall in any manner impair the right of any person or persons interested, to enforce at all times and against all persons the restrictions in this agreement contained prohibiting the use or occupation of all or any part of said premises by a negro or negroes." That part of the agreement relied on merely provides that the loan or mortgage shall not be invalidated by reason of its being made in violation of the restrictive agreement. It does not give mortgagees a license to conspire to destroy the agreement, as the evidence shows this insurance company was doing. The decree simply restrains them from making such loans in the future; it does not attempt to hold any existing loans or mortgages invalid. The court did not err in this respect.

We cannot agree that the court erred in overruling appellants' motion to set aside the decree and for a new trial.

This motion was supported by an affidavit of Fred L. Helman, which recited that Helman was executive secretary of the Woodlawn Property Owners Association from 1926 to 1933. The substance of the affidavit is that he had charge of the work of obtaining signatures to the restrictive agreement, and that at the time the case of *Burke* v. *Kleiman, supra,* was instituted, as a result of his own investigation, he knew that the owners of ninety-five per cent of the frontage involved had not signed the agreement, and that he conferred with various officials of the association in regard to the filing of that suit. The affidavit does not state that he communicated his information to anybody, or that Olive Ida Burke or any individual of the representative class for whose benefit the suit was brought, or any of the officers of the association, except Helman, knew of this fact. As far as the affidavit discloses Helman is the only person who knew of the defect. It does not allege the suit was brought at the request of the association or that it was not instituted by Mrs. Burke of her own volition and in good faith, for the benefit of herself and the other members of the class. The motion was properly denied.

The decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. JUSTICE SHAW, dissenting:

The opinion of the majority depends on its holding that the case of *Burke* v. *Kleiman, supra,* is *res judicata* of the points involved and that those points are not subject to further judicial examination. It is said first, that this was a class or representative suit, and second, that in that case the court had jurisdiction to determine whether or not the necessary ninety-five per cent of the frontage had signed up. It is further insisted that the question of jurisdiction cannot be collaterally attacked but that the only remedy must have been by appeal from the judgment in that case.

The opinion of the trial judge is based entirely upon the grounds of *res judicata* and he very reluctantly felt him-

self bound by the prior decision. Reference to the abstract of record shows a definite finding of fact that the agreement was never signed by the requisite number of property owners and, in the words of the trial judge: "In other words, there is an invalid agreement which is now sought to be enforced * * * and we know it was a fraud because the proof now shows that there wasn't ninety-five per cent * * * he committed a fraud when he brought this law suit," etc.

The undisputed fact is that by means of fraud and collusion between total strangers an agreement which is void on its face has been imposed upon some ten million dollars worth of the property of five hundred other parties who were never in court, who never had notice of any law suit, who were never by name or as unknown owners made parties to any law suit, and who have never been accorded any process whatever, either due or otherwise. And it is said that this is binding upon them; that they constituted a class because one man fraudulently said they did and another man collusively, and with equal fraud, admitted the allegation, because this second man signed a stipulation saying they had signed an agreement which they had never signed. Certainly no man's rights can be safe under such a rule of law. If one man can allege that I signed an agreement and another total stranger admit that I signed it and fraudulently bind me by this sort of an agreement, it would be contrary to the fourteenth amendment of the constitution of the United States. The trial judge found the entire case of *Burke* v. *Kleiman* tainted with fraud, procured by collusion, and intended only to validate an otherwise invalid agreement. He very reluctantly entered a decree in this case because of a mistaken idea that the former judgment was *res judicata.*

The opinion in this case states that the defendants were so numerous that it would have imposed an unreasonable hardship and burden to make them all parties to the suit.

This is a definite overruling of *Whitney* v. *Mayo,* 15 Ill. 251. It is true there were five hundred defendants, but even the humblest of these five hundred had a right to his day in court, to be made a party to the suit and to be given an opportunity to defend it. Their names were on the public records of Cook county and not the slightest excuse appears for not making them parties to the suit. If one sought to bind all the property in the city of Chicago by some restrictive covenant, he would assume the burden of making every property owner in that city a party to his suit, either by name or as unknown owner, if he was, in fact, unknown. He could not gain an advantage for himself through a fraudulent scheme simply by saying they were too numerous to mention.

The want of due process is so obvious as to require no argument and it must be admitted. It is said, however, that the court had jurisdiction to determine whether or not it had jurisdiction, and a mere restatement of this proposition refutes it. A court never has jurisdiction to determine that it has jurisdiction when it, in law, has not. The question of whether or not a court has jurisdiction of the parties and the subject matter remains forever open and forever subject to collateral attack. No court can expand its own jurisdiction simply by finding that it has jurisdiction unless that finding is based upon a question of fact which it has power to decide. In *Caswell* v. *Caswell,* 120 Ill. 377, and in many subsequent cases, this rule has been made clear. (*Beck* v. *Lash,* 303 Ill. 549.) The most recent reference to it in this court is to be found in *People* v. *Sterling,* 357 Ill. 354, where we pointed out the distinction between that kind of fraud which goes to the jurisdiction of the court, as distinguished from that other kind which intervenes to procure a decree after the court has obtained a valid jurisdiction. The rule is too clear for restatement. Fraud which impairs or prevents attachment of jurisdiction may always

be raised collaterally, and it is only that kind which intervenes after jurisdiction has been obtained that cannot be attacked.

We have in the case before us both kinds of fraud: Fraud in the procurement of the decree by a false stipulation, and a fraud going to the jurisdiction of the court in the very basic and essential allegation that there was a valid agreement that it was actually signed by the necessary ninety-five per cent of frontage owners, and fraud in the jurisdictional allegation that there was a class to be represented when, in fact, no such class ever existed.

It is my opinion that even if the attempted agreement had been signed by the owners of ninety-five per cent of the frontage involved, and if the case of *Burke* v. *Kleiman* had been brought in good faith instead of fraudulently, it still could not have been such a class or representative suit as would impair the title of other property owners. Without going into extensive citations of authority, it seems clear to me that a class suit cannot properly be entertained except in that very limited field of cases where the parties have not only a common and general interest among themselves but also an identical right to be protected in a single and undivided *res*. The entire theory of class representation is a dangerous exception to the general rule that each interested person must be made a party by name, notified of the proceedings and given his day in court. The rules guarding it must be so strict and carefully enforced as to be commensurate with the risks of injustice which are involved. Due process most certainly requires notice and an opportunity to be heard, and no case has come to my attention where the court has failed to make absolutely certain, in advance, that the parties to represent a class must be selected with such care and have such personal interest in the litigation as to guarantee that the rights of all will be fully protected.

In the case before us, each property owner held and owned his property in severalty. He might or might not wish the covenant enforced. He might or might not wish to contest its validity. He might or might not wish to sell, lease or mortgage his property without regard to it. On any of these questions, his next door neighbor or any other property owner in the district might disagree with him. There could be no certainty nor even any probability that they would all agree on a course of conduct to be followed at any particular time or under any particular circumstances. There was no common right nor any common fund, nor any common or undivided *res* to be dealt with, and certainly no one ever had any right or power to speak for any one but himself.

The agreement which formed the foundation for this fraudulent case of *Burke* v. *Kleiman* provided on its face that it should be void and of no force or effect unless signed by the owners of ninety-five per cent of the frontage involved within a certain time and placed of record within a certain date. To me, it seems obvious that until those signatures were obtained and the very terms of the agreement itself complied with, there could by no possibility be even the semblance of a class to be represented in a class suit, even if such a suit could be possible under the circumstances, and it seems to me equally beyond question that such a defect in signers could not, in a court of chancery, be obviated through a fraudulent allegation that they had, in fact, been obtained when they had not, and an equally fraudulent and collusive and false stipulation that the owners had signed.

Mr. JUSTICE MURPHY concurs in this dissenting opinion.