(No. 27069.—Decree affirmed.)

Francis J. Otto *et al.,* Appellants, *vs.* John S. Alexander *et al.,* Appellees.

*Opinion filed May 20, 1943—Rehearing denied Sept. 15, 1943.*

Wilson, J., dissenting.

CHARLES LIEBMAN, for appellants.

BLUFORD, KRINSLEY, SCHULTZ & VOORHEIS, (DAVID BLUFORD, RAYMOND HARKRIDER, VICTOR HEDBERG, and ROBERT B. MOORE, of counsel,) for appellee Westchester Real Estate Company.

KINNE, SCOVEL, ROBSON & MURPHY, (HARRY C. KINNE, of counsel,) for other appellees.

Mr. JUSTICE SMITH delivered the opinion of the court: This is an appeal from a decree of the superior court of Cook county. The court sustained a motion filed by two of the defendants to dismiss the complaint.• In passing on the motion, and in dismissing the suit, the chancellor held that to grant the relief prayed for would violate the constitution of the United States and the constitution of the State of Illinois. The decree of the court, therefore, having been based upon constitutional grounds, a constitutional question is involved, and this court has jurisdiction on direct appeal.

The suit is most unusual. In January, 1926, the Chicago Title and Trust Company, as trustee, laid out a subdivision known as George F. Nixon & Company's Terminal Addition to Westchester. The subdivision, as laid out, covered an eighty-acre tract of land. It contained 480 lots. The uniform deeds under which the lots were conveyed, contained certain building restrictions. The deeds by which 350 of the lots were conveyed contained the restriction that until July 1, 1970, no buildings should be erected on any of the lots, except three-story, three-flat buildings, other than of frame or wood construction, and costing not less than $18,000. The deeds by which 125 of the lots were conveyed, contained a like restriction, but limited the buildings to be erected on those lots to business buildings, other than frame or wood construction, and costing not less than $5000. As to the remaining five lots, there

were no restrictions contained in the deeds by which they were conveyed. It was alleged that no buildings had been constructed on the entire subdivision, except one three-flat building, constructed by the promoters, prior to 1929. Like many projects of this kind, originating before the depression, this subdivision had a glorious prospectus, but viewed in its retrospect, it has a disillusioned past. The complaint was filed by four individual lot owners. Appellants Otto and Ockenga each owned one lot. Appellants Arthur Heintze and Isabel Heintze owned two lots, jointly. The purpose of the suit was to obtain a decree declaring the building restrictions invalid and removing the same as clouds on the title to the lots owned by plaintiffs and all other owners of lots in the subdivision. To state it more accurately, it is asked that the restriction clause be stricken out of every deed or modified so as to provide that no building should be erected on any lot, except one-unit dwellings, costing not less than $4500.

In the view we have taken of the case, it will not be necessary to go into detail as to the grounds alleged for the removal of the restrictions. It is sufficient to say that it is alleged in the complaint that the conditions have so changed that none of the lots sold under the restrictions are now suitable for the uses limited by the restrictions; that the location of the property and the present surrounding conditions make it unwise, if not impossible, for anyone to attempt to erect buildings on any of the lots within the restrictions. There is a further allegation in the complaint that the lots were sold in the subdivision under misrepresentations of the promoters as to their potential value and future use. The prayer of the complaint was that the court modify the building restrictions as to certain lots and provide, by its decree, that on said lots one-unit family-residential dwellings may be erected at a minimum cost of $4500. This, of course, would constitute a reformation of all the deeds by striking out the

restrictions contained therein, and inserting an entirely different restriction.

As already observed, there were four plaintiffs named in the complaint. It was alleged, however, that they brought the suit for their own benefit and for the benefit of all persons interested in lots in the subdivision who desired to join in the prosecution of the suit, or who may, thereafter, desire to partake of the benefits of any decree entered.

Three classes of defendants were named in the complaint. In paragraph 18 the complaint sets out and makes defendants a list of 225 individuals as lot owners, giving the number of the lot owned by each defendant. In paragraph 19 it is alleged that other persons have some interest as lot owners or holders of indebtedness secured by trust deeds covering the lots. It is further alleged that the names of these defendants are unknown. It is alleged that they are also made parties as "unknown owners."

In paragraph 21 it is alleged that in addition to the persons named in the preceding paragraphs, and who were made defendants to the suit, there are still others who have, or claim, some right, title, interest or lien in, to or upon, the real estate described in the complaint. It is further alleged that the names of such persons are also unknown, and cannot, on diligent inquiry, be ascertained. It is averred that these persons are also made parties to the suit, as "unknown owners." It is alleged in said paragraph, "that the defendants who will be served with process herein, are directly representative of the interests of all other persons who may be interested in said premises, and as such representatives, are likewise made parties hereto, so that in any decree herein, the interests of all other persons not served, who may have an interest in said premises, may be determined, and such persons not served ought to be held bound by such decree on the principle of representation."

A summons was issued for all of the 225 defendants whose names were set out in the complaint. The record shows that 60 of the named defendants were served with summons. No service of any kind appears to have been had on the remaining 165 named defendants, or on those referred to in the complaint as "unknown owners."

Two of the defendants served filed a motion to strike the complaint. No appearance or pleadings as to any other defendants are shown by the record. From the decree of the court sustaining the motion striking the complaint, this appeal has been perfected. There was no dispostion of the case as to other defendants.

At the threshold of the inquiry, we are confronted with the question of whether a suit of this character can be maintained by a part, only, of the lot owners purporting to represent all the owners of lots in the subdivision, and against a part, only, of the named and the "unknown" defendants vicariously represented by the comparatively small number of defendants actually served with process.

The purpose of this suit is to cancel the restrictions contained in all the deeds by which each lot owner in the subdivision acquired title to the lot or lots owned by him, and to substitute a new and different restriction in each of those deeds. The restrictive agreement did not purport to constitute a joint obligation or liability. It constituted the several obligations of all the lot owners and those claiming under them. The restrictive covenant ran severally to every other owner of a lot in the subdivision. Every lot owner was a party to the covenant in each deed and was directly interested therein, as a party for whose benefit it was made.

One of the objections raised by the motion to dismiss is that if the relief sought by the plaintiffs was granted, it would deprive the defendants of their property without due process of law. The court, in sustaining the motion, expressly held that the entry of a decree cancelling or

modifying the restrictions sought to be set aside, would deprive the defendants of their property without due process of law, in violation of the State constitution and the fourteenth amendment to the constitution of the United States.

The same question was invovled in *Lee* v. *Hansberry,* 372 Ill. 369. That case involved the same character of restrictive covenants. It was a suit to enforce a restrictive covenant contained in a contract signed by some 500 property owners, owning property in a certain district in the city of Chicago. It appeared in that case that prior to the institution of the suit, a similar suit had been brought by another property owner in the restricted territory, purportedly against all other property owners signing the agreement, as a representative suit. The prior case is *Burke* v. *Klieman,* 277 Ill. App. 519. In disposing of the *Hansberry case* this court held that the judgment or decree in *Burke* v. *Klieman,* 277 Ill. App. 519, was *res judicata* and constituted a bar to the action in *Lee* v. *Hansberry,* 372 Ill. 369; that the *Burke* v. *Klieman* suit was a representative suit, involving the same restrictive agreement and covenant, and was binding upon all the parties to the agreement, notwithstanding they were parties to the suit only by representation.

The Supreme Court of the United States, however, reversed the judgment of this court. It held that a representative suit could not be maintained by a part, only, of the property owners for whose use and benefit the restrictive covenants were made. In the course of the opinion, that court said: "It is plain that in such circumstances all those alleged to be bound by the agreement would not constitute a single class in any litigation brought to enforce it. Those who sought to secure its benefits by enforcing it could not be said to be in the same class with or represent those whose interest was in resisting performance, for the agreement by its terms imposes obliga-

tions and confers rights on the owner of each plot of land who signs it. If those who thus seek to secure the benefits of the agreement were rightly regarded by the State Supreme Court as constituting a class, it is evident that those signers or their successors who are interested in challenging the validity of the agreement and resisting its performance are not of the same class in the sense that their interests are identical so that any group who had elected to enforce rights conferred by the agreement could be said to be acting in the interest of any others who were free to deny its obligation. Because of the dual and potentially conflicting interests of those who are putative parties to the agreement in compelling or resisting its performance, it is impossible to say, solely because they are parties to it, that any two of them are of the same class. Nor without more, and with the due regard for the protection of the rights of absent parties which due process exacts, can some be permitted to stand in judgment for all." The court there concluded that an attempt to litigate the validity of restrictive covenants in a representative suit, to which some of the parties were parties by representation, only, was a denial of due process of law, in violation of the fourteenth amendment. (*Hansberry* v. *Lee,* 311 U. S. 32; 61 S. Ct. 115, 85 L. ed. 22.) This decision is conclusive and is binding on this court. The questions raised in this case are no different from the questions considered and decided by the court in that case.

The chancellor correctly held that to grant the relief prayed for in the complaint would constitute a denial of due process of law, in violation of the fourteenth amendment to the Federal constitution. The decree dismissing the complaint was correct and it is affirmed.

*Decree affirmed.*

Mr. JUSTICE WILSON, dissenting.