**Arthur G. Hintze et al., Appellees, v. Gertrude C. Allen et al., Appellants.**

**Gen. No. 42,703.**

 Heard in the third division of
this court for the first district at the December term, 1943. 
 Opinion filed May 18, 1945. Released
for publication June 8, 1945.

HOFFMAN, HOFFMAN & McCABE, of Chicago, for appellants; HARRY HOFFMAN and IRVING HOFFMAN, both of Chicago, of counsel.

THOMAS TIGHE and CHARLES LIEBMAN, both of Chicago, for appellees.

MR. JUSTICE LUPE delivered the opinion of the court.

Plaintiffs are the owners in joint tenancy of lot 32 in block 6 of Manheim Road and Twenty-second street subdivision which is located within the Village of Westchester. Westchester is approximately five miles west of the limits of the City of Chicago. Plaintiffs' deed of conveyance contained covenants restricting until 1970 the use of the lot for any purpose other than the construction of two- or three-story and basement apartment buildings. The buildings under the restriction were to be constructed of brick, stone, tile, and concrete or similar material, said buildings to cost not less than a certain amount therein stated. The complaint alleged that the plaintiffs brought their suit to modify said restrictions in so far as they refer to 217 lots adapted for residential purposes. A decree was entered modifying the restrictions so that the lots owned by plaintiffs and others joining with them might be used for one-, two- or three-story and basement residential buildings which were permitted to be constructed at a lower cost than named in the restrictions. This appeal followed.

In the complaint it is alleged that Ella Westphal, as owner of the property involved in this proceeding, on September 23, 1925, executed and filed in the office of

the registrar of titles of Cook county a plat subdividing the premises into lots and blocks; that the plat bore a legend with reference to the types of buildings to be erected upon said lots, known as building restrictions: Lots fronting on Brainard avenue and 22nd street may be used for business purposes; all other lots may be used for two- or three-story and basement apartment buildings; all buildings must be constructed of brick, stone, tile, and concrete or similar materials. Thereafter on December 1, 1925, the Chicago Title & Trust Company, a corporation, as trustee, became the owner of the premises, and it executed and filed in the office of the registrar of titles of Cook county, Illinois, a declaration which was joined in by Ella Westphal, which declaration contained building restrictions as to all the lots in the subdivision in question. That plaintiffs, on August 7, 1939, became the owners and acquired title in joint tenancy to lot 32 in block 6 of the subdivision, and that they are now the owners of said lot; that on October 3, 1925, the subdivision was incorporated within the village limits of the Village of Westchester; that the village covers an area of $3\frac{1}{2}$ square miles and has a population of approximately 600 persons; that the village was incorporated on October 3, 1925, as a result of the extension of the Chicago Rapid Transit Company to the area now covered by the village. It is alleged that the extension of the elevated railway was conceived and executed during the real estate "boom" in Chicago and was based upon unreasonable and impossible expectations by the promoters of the extension and persons interested in selling the neighboring real estate, and that in order to make it appear that the subdivision in question had a higher value so that greater prices could be obtained for the lots, the restrictions complained of were put on the property, and the purchasers were told that the portions of the property adapted for residential purposes were peculiarly suited

for two- and three-apartment buildings as provided for in said restrictions; that the purpose of the restrictions was to maintain the premises at a higher value and to enable them to be utilized on the basis of their highest economic value. It is further alleged that said representation proved to be wholly groundless. It then describes the population of the Village of Westchester, the nature of the buildings constructed within its limits, and sets forth that all building substantially was had prior to 1929; that no structure of any kind has ever been built on any of the lots in this subdivision since the filing of the plat; that it had been impossible to obtain capital to finance the construction of two- and three-apartment buildings on the portion of the subdivision adapted for residential use; that the subdivision, by virtue of the changing financial and general conditions, is now well adapted for the construction of one-family residential buildings, and is wholly unadapted, because of the changing financial and general conditions, for the construction of two- and three-apartment residential buildings that so long as the restrictions in question remain of record against the premises they constitute a cloud on the title and render all of said real estate wholly valueless for any purpose; that in adjoining subdivisions which were restricted to two- and three-story apartment buildings, no such buildings had been built, but that in such subdivisions, when such restrictions were lately removed, the building of one-family buildings on a large scale occurred immediately. The complaint then alleges that if the restrictions be removed from the subdivision all of the lots thereof will immediately obtain a substantial economic value and that loans will be made available for the construction of single-family dwellings, and the community as a whole will be greatly benefited; that plaintiffs bring suit to modify the restrictions in so far as they refer to the lots adapted for residential purposes, and also for a decree providing for the construc-

tion of one-family dwellings thereon; that the suit is brought not only on behalf of plaintiffs but on behalf of all persons interested in the lots who may seek to join and contribute their share of expenses of conducting the proceedings. A decree is sought charging such reasonable expense against all persons who choose to take the benefit of these proceedings. All persons interested in lots in the subdivision are made parties defendant, and plaintiffs pray in their complaint, that the court by its decree modify the building restrictions to permit the erection of one-unit family residence dwellings at a cost of not less than $4,500; that the court may perpetually enjoin all persons from attempting to enforce the building restrictions with respect to the lots adapted for residential purposes, and that the court shall determine the expense of this proceeding including necessary disbursements and reasonable attorney's fees, and that the decree provide for the payment of such expenses and disbursements by all persons who may choose to claim the benefit of these proceedings prior to or after the entry of a decree.

Answers were filed by certain defendants, which admitted the existing restrictions and neither admitted nor denied the other allegations of the complaint but averred that the allegations in the complaint, with reference to the beneficial effects to ensue as a result of the removal of the restrictions were mere conclusions, speculations, and hopes of the plaintiffs, and asked that they be stricken. The answers further set forth that the defendants had purchased their lots on the basis of the restrictions and had paid the full price for said lots in the belief that said restrictions will give the real estate a higher value than if the restrictions were removed, and that the defendants feel and know that if said restrictions were removed or modified in any way the value of their lots would immediately be reduced; that the restrictions were reasonable and not against public policy and that under

these restrictions one-story buildings may be erected at a cost of not less than $5,000, whereas, plaintiffs desire to modify the restrictions to enable the owners to erect one-story buildings at a cost of not less than $4,500, and that said modifications cannot in any way improve the situation and cause or bring about the results as described in the complaint. Defendants further aver that they answered the complaint not only on behalf of themselves but on behalf of all other persons interested in the lots who desire to join in the defense of the suit and who desire to partake of the benefits of any decree which may be entered herein, upon contributing a fair and just amount of the expense in defending the proceedings. The answers denied that plaintiffs were entitled to the relief sought.

While this case was pending in the trial court, the Appellate Court of the First District decided the case of *Ockenga v. Alken*, 314 Ill. App. 389. The exact language and allegations contained in the complaint in the present case were used in the *Ockenga* case. The ruling affirmed the decision of the superior court dismissing the bill for want of equity. There was no evidence heard in the *Ockenga* case and the ruling of the court was had on a motion to strike the complaint. After the decision in the *Ockenga* case, plaintiff in the instant case was granted leave to file an amendment and supplement to the complaint, and in it alleges that the promoters of the subdivision, in order to sell the lots in question and to inflate the selling price thereof, and to induce prospective purchasers to pay large prices therefor, made representations to the purchasers that the lots were suitable for the immediate construction of two- and three-flat apartment buildings, and that within a short time a large number of apartment buildings would be built upon the lots; that the promoters expressly and impliedly represented that apartment buildings would continue to be economically feasible and that there would be a free and active market for

the lots subject to such restrictions. It alleged further that the character of the neighborhood at the time of the placing of said restrictions was such that it could have reasonably been supposed that the lots were suitable for the erection of apartment buildings in accordance with the restrictions, but there has occurred a radical change in the character of the neighborhood so that for many years in the past the neighborhood has not been suitable for the construction of buildings in accordance with said restrictions. That people who were living in Westchester at the time the restrictions were placed upon the property were those of middle type, accustomed to pay rentals from $88 to $125 per month, but that such persons have moved out of the village, and that persons now living there are able and accustomed to pay no more than $45 to $55 per month for apartments; that as a result of the war and preparations therefor there has been constructed in the western suburbs a large number of defense plants; that as a result of the construction of said plants there has arisen an acute shortage of housing facilities for people who will shortly be needed in work in said plants; that the subdivision in question is almost in the geographical center of the defense plant area; that by reason of the war the only housing construction now being authorized by the war priorities board is defense housing, consisting of single dwelling family residential units, to cost not exceeding $4,500, and that there are also being constructed large blocks of cheap residential buildings, commonly known as "row house" dwellings. It further alleges that because of the radical change in the neighborhood due to the construction of defense plants and the change in character of the neighborhood due to the class of persons who now reside therein, the highest and best use of said land, and the only feasible use thereof, is for residential construction of the character now approved by

the federal housing authority for single family units.

Certain defendants filed their answers to the amended and supplemented complaint, denying the material allegations thereof. They further denied that the plaintiff was interested in relieving shortage of housing facilities, and alleged that the plaintiffs were only interested in taking advantage of the present war situation for their personal and selfish interests, and to the detriment and harm of the defendant and defense workers. They denied that housing shortage could be relieved by merely lessening the restrictions on the lots owned by the plaintiffs.

The case was referred to a master and upon his report the court entered a decree modifying the restrictions as prayed in the complaint. The decree further provided that it was impossible at the time of the entry of the decree to anticipate the number of persons who would choose to come in and partake of the benefits of the decree. It further found that the suit was properly brought by plaintiffs for the use and benefit not only of themselves but of all persons who might choose to come in and partake of the benefits thereof or of the benefits of the decree; that all of the defendants have a common and identical interest in a common and identical question of law and fact namely, the question of whether the building restrictions affecting the residential lots in the subdivision aforesaid of the plaintiffs and those who adopt their position should be modified; and that the defendants who have been served with process herein are truly representative and can and do adequately represent, defend and advance the interests of all of the defendants herein and all persons interested in all of said lots upon the doctrine and theory of representation; and that all persons interested in the real estate affected by the restrictions first above mentioned have either been duly served with process of this court or

are properly and fully represented in this proceeding, so that this court has jurisdiction over them and they are bound by this decree.

Defendants contend that the court erred in holding that the instant case comes under the classification of a representative suit, whereas plaintiffs contend that the instant suit was brought by plaintiffs not only on their own behalf but on behalf of those who actually wish to come in with the plaintiffs, and that the restrictions are modified on only four lots, three lots owned by the plaintiffs and the lot of Miss Boughton and they further argue that the restrictions remain in full force and effect as to all other lots. Defendants rely upon the case of *Otto v. Alexander,* 383 Ill. 482, in support of their contention. In that case the court said, at pages 484–488:

"The prayer of the complaint was that the court modify the building restrictions as to certain lots and provide, by its decree, that on said lots one-unit family-residential dwellings may be erected at a minimum cost of $4500. This, of course, would constitute a reformation of all the deeds by striking out the restrictions contained therein, and inserting an entirely different restriction.

"As already observed, there were four plaintiffs named in the complaint. It was alleged, however, that they brought the suit for their own benefit and for the benefit of all persons interested in lots in the subdivision who desired to join in the prosecution of the suit, or who may, thereafter, desire to partake of the benefits of any decree entered.

". . . . . .

"In paragraph 21 it is alleged that in addition to the persons named in the preceding paragraphs, and who were made defendants to the suit, there are still others who have, or claim, some right, title, interest or lien in, to or upon, the real estate described in the com-

plaint. It is further alleged that the names of such persons are also unknown, and cannot, on diligent inquiry, be ascertained. It is averred that these persons are also made parties to the suit, as 'unknown owners.' It is alleged in said paragraph, 'that the defendants who will be served with process herein, are directly representative of the interests of all other persons who may be interested in said premises, and as such representatives, are likewise made parties hereto, so that in any decree herein, the interests of all other persons not served, who may have an interest in said premises, may be determined, and such persons not served ought to be held bound by such decree on the principle of representation.'

". . . . . .

"At the threshold of the inquiry, we are confronted with the question of whether a suit of this character can be maintained by a part, only, of the lot owners purporting to represent all the owners of lots in the subdivision, and against a part, only, of the named and the 'unknown' defendants vicariously represented by the comparatively small number of defendants actually served with process.

"The purpose of this suit is to cancel the restrictions contained in all the deeds by which each lot owner in the subdivision acquired title to the lot or lots owned by him, and to substitute a new and different restriction in each of those deeds. The restrictive agreement did not purport to constitute a joint obligation or liability. It constituted the several obligations of all the lot owners and those claiming under them. The restrictive covenant ran severally to every other owner of a lot in the subdivision. Every lot owner was a party to the covenant in each deed and was directly interested therein, as a party for whose benefit it was made.

"One of the objections raised by the motion to dismiss is that if the relief sought by the plaintiffs was

granted, it would deprive the defendants of their property without due process of law. The court, in sustaining the motion, expressly held that the entry of a decree cancelling or modifying the restrictions sought to be set aside, would deprive the defendants of their property without due process of law, in violation of the State constitution and the fourteenth amendment to the constitution of the United States.

"The same question was involved in *Lee v. Hansberry,* 372 Ill. 369. That case involved the same character of restrictive covenants. It was a suit to enforce a restrictive covenant contained in a contract signed by some 500 property owners, owning property in a certain district in the city of Chicago. It appeared in that case that prior to the institution of the suit, a similar suit had been brought by another property owner in the restricted territory, purportedly against all other property owners signing the agreement, as a representative suit. The prior case is *Burke v. Klieman,* 277 Ill. App. 519. In disposing of the *Hansberry case* this court held that the judgment or decree in *Burke v. Klieman,* 277 Ill. App. 519, was *res judicata* and constituted a bar to the action in *Lee v. Hansberry,* 372 Ill. 369; that the *Burke v. Klieman* suit was a representative suit, involving the same restrictive agreement and covenant, and was binding upon all the parties to the agreement, notwithstanding they were parties to the suit only by representation.

"The Supreme Court of the United States, however, reversed the judgment of this court. It held that a representative suit could not be maintained by a part, only, of the property owners for whose use and benefit the restrictive covenants were made. In the course of the opinion, that court said: 'It is plain that in such circumstances all those alleged to be bound by the agreement would not constitute a single class in any litigation brought to enforce it. Those who sought to secure its benefits by enforcing it could not be said to

be in the same class with or represent those whose interest was in resisting performance, for the agreement by its terms imposes obligations and confers rights on the owner of each plot of land who signs it. If those who thus seek to secure the benefits of the agreement were rightly regarded by the State Supreme Court as constituting a class, it is evident that those signers or their successors who are interested in challenging the validity of the agreement and resisting its performance are not of the same class in the sense that their interests are identical so that any group who had elected to enforce rights conferred by the agreement could be said to be acting in the interest of any others who were free to deny its obligation. Because of the dual and potentially conflicting interests of those who are putative parties to the agreement in compelling or resisting its performance, it is impossible to say, solely because they are parties to it, that any two of them are of the same class. Nor without more, and with the due regard for the protection of the rights of absent parties which due process exacts, can some be permitted to stand in judgment for all.' The court there concluded that an attempt to litigate the validity of restrictive covenants in a representative suit, to which some of the parties were parties by representation, only, was a denial of due process of law, in violation of the fourteenth amendment. (*Hansberry v. Lee,* 311 U. S. 32, 61 S. Ct. 115, 85 L. ed. 22.) This decision is conclusive and is binding on this court. The questions raised in this case are no different from the questions considered and decided by the court in that case.''

Plaintiffs argue in their brief that the Supreme Court in *Otto v. Alexander* did not decide that case on the merits but stopped on the threshold by holding that the doctrine of representation did not apply. We see no merit in this argument.

We feel that the question of the right of plaintiffs to maintain this suit was precisely the question upon

which *Otto v. Alexander* was decided. That case is therefore controlling here. Since plaintiffs have not the right to maintain this suit, we need consider none of the other points raised in the briefs. The above case had not been decided when the chancellor entered the decree appealed from herein, and he therefore did not have the benefit of that decision.

Accordingly, the decree is reversed and the cause remanded to the superior court with directions to dismiss the complaint for want of equity.

*Reversed and remanded with directions.*

BURKE, P. J. and KILEY, J., concur.