## JONATHAN L. CHRISTIE *et al.*

### *v.*

## THOMAS HALE.

1. EQUITY.  Equity looks at the substance, and not to the form given to a transaction.

2. CONVEYANCES—*when made to secure a debt.*  A deed, absolute in terms, but made to secure a debt, is not void, unless third parties sustain an injury thereby.

3. LIEN—*mortgage—judgment—priority.*  Where a creditor, having a deed, absolute in terms, to secure a debt, with the intention of putting it in the form of a mortgage, conveyed it back to his grantor, and simultaneously took a mortgage, he will not lose his lien as against a junior judgment creditor of the mortgagor.

4. CHANCERY—*injunction—cloud on title.*  A court of chancery will restrain a sale on an execution, where it appears that a deed acquired at such a sale would only be a cloud on the title of a *bona fide* purchaser.

WRIT OF ERROR to the Circuit Court of De Kalb county; the Hon. THEODORE D. MURPHY, Judge, presiding.

This was a bill in chancery, filed by Thomas Hale, the defendant in error, in the De Kalb Circuit Court, to restrain the sheriff of that county from selling certain lands under an execution.  Answers and replications being filed, and the cause coming on for hearing, a decree was rendered setting aside the levy, &c., and making the injunction perpetual. The case was brought to this court by a writ of error.

The facts fully appear in the opinion.

Mr. E. S. SMITH, for the plaintiffs in error.

Messrs. MILLER, VAN ARMAN & LEWIS, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the court:

This was a bill in chancery, filed by Thomas Hale, in the De Kalb Circuit Court, against Harman K. Wells, Jonathan L. Christie, John H. Ball, James L. Ball, Baldwin Woodruff and Richard R. Woodruff, to restrain the sheriff from selling the land in controversy, under an execution in his hands. It appears, that on the 29th of January, 1854, James L. Ball conveyed one hundred and sixty acres of land, situated in De Kalb county, to Thomas Hale, to secure the payment of indebtedness then existing, or which might afterwards accrue, from Ball and his brother, who were in business, to Hale. This deed was absolute in form, but Hale gave to Ball a written memorandum showing the purpose for which the deed was executed.

Indebtedness having accrued under the arrangement, and not having been paid, Hale, in January, 1855, filed a bill in the De Kalb Circuit Court to foreclose his mortgage. On the 18th day of October, 1855, and while this bill was still pending, Daniel C. Otis and Jonathan Ogden recovered a judgment in the United States Circuit Court, for the Northern District of Illinois, against the Balls. In March, 1856, the Balls applied to Hale for an extension of time in which to pay their indebtedness; and proposed to pay within three years from the 4th of August 1854, with six per cent. interest, which proposition Hale accepted; and to carry out the arrangement, he sent to his attorney a quitclaim deed of the land, to James L. Ball, as grantee. The deed was executed in Chicago, and bears date the 17th of March, 1856, and the acknowledgment on the 25th of the same month; and he requested his attorney to obtain a mortgage on the same property from Ball when the quitclaim deed should be delivered, to secure the indebtedness for which the bill had been filed.

It also appears, that on the 22d of March, 1856, Ball, to carry out the agreement, executed a mortgage, which was

acknowledged on the 25th of that month, and the deed was delivered by the attorney to Ball, and the mortgage by him to the attorney, as simultaneous acts; and both instruments were filed for record at the same instant of time; and that the delivery by both parties to the recorder was done at one and the same time. The suit for a foreclosure by Hale was dismissed on the 29th of March, following.

On the 8th of December, 1859, Hale sued out a *scire facias*, to foreclose the substituted mortgage, in the De Kalb Circuit Court, and obtained a judgment on the 29th of November, 1860. The mortgaged premises were sold under this judgment, on the 7th of March, 1862, to Hale, and, not being redeemed, he subsequently obtained a sheriff's deed.

On the 24th of November, 1860, Otis and Ogden sued out a *venditioni exponas*, and on the 24th of January, 1861, the marshal sold the property to the plaintiffs in the execution. An execution had been issued on this judgment on the 1st of July, 1856, within one year after it was recovered, and levied upon this land, but was returned without a sale. Hale filed a bill in the United States Circuit Court to enjoin the marshal from executing a deed on that sale, but on the 22d day of April, 1862, while this bill was pending, and subsequently to the date of the deed to Hale from the sheriff, the Balls confessed a judgment in favor of Harman K. Wells and Jonathan L. Christie, on which an execution was issued to the sheriff, and they redeemed from the marshal's sale, and were proceeding to sell the land under their judgment, when this bill was filed to enjoin them from making the sale.

As to Ball, there is no pretense that he had any title to the premises. His title had been divested by the foreclosure and sale under the judgment on the *scire facias* in favor of Hale; and by the redemption from Otis and Ogden's sale, and purchase under their judgment, all of their claim to the land ceased and vested in Wells and Christie. This, then, leaves the whole contest between defendant in error and Wells and

Christie. And the question is, whether defendant in error acquired Ball's title by his foreclosure and purchase, or was that sale subject to Otis and Ogden's judgment lien, to which Wells and Christie have succeeded; or did Otis and Ogden only acquire a lien upon Ball's equity of redemption from defendant in error's mortgage? If the latter, then defendant in error is entitled to the relief sought; otherwise his bill should have been dismissed.

It is not questioned that defendant in error, by his deed from Ball, with the defeasence executed by him, had the first and a valid lien upon the premises. There is no pretense, that the arrangement then made was fraudulent, or otherwise invalid. But it is contended, and the whole question turns upon the point, that when he re-conveyed to Ball and canceled the defeasance, and dismissed his bill to foreclose, he let in the junior lien of Otis and Ogden, and that the mortgage which he then took on the premises became subject to Otis and Ogden's judgment.

When Otis and Ogden acquired their judgment it became a lien alone on Ball's equity of redemption. The deed from Ball to Hale was then on record, and was notice to the world. There is no evidence that it was made for fraudulent purposes, and it would be unjust, upon its turning out, from investigation, to be intended fairly as a security for a debt due the grantee, to hold that because it purported to convey the fee absolutely, that he, therefore, could not claim and hold a less interest. Equity looks at the substance, and not to the form given to the transaction. And it has not been held that where a conveyance in terms, intended in good faith as a security for a debt, and where no person has sustained any injury by the transaction, because he could not in equity claim all that he seemed to hold by the deed, he should not hold a lien subject to the equities of the grantor. Such transactions are not held to be void, unless third parties have sustained injury by the transaction. *Shinas* v. *Craig*, 7

Cranch, 50. There is nothing to show that Otis and Ogden received any injury, or were misled by this transaction. They simply obtained judgment, perhaps, without any knowledge that Ball had the right to redeem, but if they had, they must have learned the true character of the transaction from him, and in either event they were not deceived.

In the case of *Curtis* v. *Root*, 20 Ill. 53, this court said:

"It is a principle of law, too familiar to justify a reference to the authorities, that a mortgage given for the purchase money of land, and executed at the same time the deed is executed to the mortgagor, takes precedence of a judgment against the mortgagor. The execution of the deed and mortgage being simultaneous acts, the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and vests in the mortgagee, without stopping at all in the purchaser, and during this instantaneous passage, the judgment lien cannot attach to the title. This is the reason assigned by the books why the mortgage takes precedence of the judgment, rather than any supposed equity which the vendor might be supposed to have for the purchase money."

In this case, the delivery of the deed of conveyance to Ball, and the mortgage back to Hale, were simultaneous and instantaneous acts. There was no intention of the parties to change their relative rights, but simply to put the mortgage in legal form. And the acts being simultaneous, the title to the land and the rights under the mortgage vested at the same instant of time, and, according to what was said in *Curtis* v. *Root*, there was no period of time when the judgment lien could have attached, as prior to that of the mortgage. There was not an instant of time when Ball held the fee under this transaction, when Hale did not hold the mortgage. Ball, in other words, took the fee subject to the mortgage, precisely as if he had purchased any other tract of land from some other person. The fee was in Hale before and the

16—46TH ILL.

right of redemption was in Ball, and this conveyance and mortgage left them in the same relative position, nor had it changed before or at the time of delivering the deed and mortgage.

Nor is defendant in error estopped by matter *in pais* from asserting his lien. He did no act to mislead Otis and Ogden as to the true character of the transaction. His deed was on record, and Ball, their debtor, was in possession, and they had notice or were chargeable with notice of the facts in the case. This being so, they were not misled by defendant in error to do anything prejudicial to their rights. And the same is true of plaintiffs in error. Otis and Ogden could have rendered their lien availing to subject the land to their judgment by redeeming from the mortgage held by defendant in error, as by redeeming from his sale on his judgment of foreclosure in the *scire facias* case. But failing to do so, their lien on the equity of redemption was lost when the time for a redemption from that sale expired. They then sold nothing under their execution, as Ball's equity of redemption was foreclosed and barred. And plaintiffs in error could, of course, acquire by their redemption from that sale no greater or better right than Otis and Ogden held, hence they acquired no rights in the premises either as a lien or otherwise.

It is also insisted, that although plaintiffs in error may have no lien or other right, that the remedy of defendant in error is complete at law, and equity will not entertain jurisdiction to grant relief. The fact that the holder of a cloud on complainant's title may compel him to defend himself against it, with the expense and vexation attending a suit, is the ground upon which bills *quia timet* are placed. *Jarvis* v. *White*, 7 Ves. 415. And if the court may, to prevent litigation, expense and vexation, entertain jurisdiction to remove a cloud, no reason is perceived why it may not be exercised to prevent the creation of such a cloud. And in the case of *Pettit* v. *Shepherd*, 5 Paige, 493, it was held that the court of

chancery would restrain a sale on an execution, where it appeared that a deed acquired at such a sale would only be a cloud on the title of a *bona fide* purchaser. In that case, a creditor, after his judgment had ceased to be a lien, sued out an execution, and the sheriff was proceeding to sell land upon which the judgment had been a lien, but had been sold by the judgment debtor to a *bona fide* purchaser, and, on his application, the court enjoined the sale. In principle, there is no difference in that and the case under consideration, so far as it relates to the jurisdiction of the court. The court below committed no error in enjoining plaintiffs in error from selling this land under their execution, and the decree must be affirmed.

*Decree affirmed.*