Minshall, J.
On March 7,1881, G. T. Simmonds and wife executed and delivered to T. C. Campbell a deed, absolute *213 in form, of a house and lot in Cincinnati for the expressed consideration of $18,000.
According to a written proposition, signed by Campbell, upon which the deed was made, the consideration consisted of his assumption of a mortgage on the premises to E. D. Lincoln, then amounting to $12,530 and of an indebtedness of $320, due Campbell’s firm for fees; and the allowance of an indebtedness to Campbell of $2,100, for money before loaned, and cash $3,050. It also appeared from this writing that Campbell was to let Simmonds remain in the propertyfor one year rent free, and if he did not then pay the money advanced he was to give up the premises, and if he did, Campbell was to reconvey them.
Afterward, on May 7, 1881, and before the above deed was recorded, Simmonds made an assignment to Campbell of all his property, real and personal, for the benefit of his creditors; and on the same day Campbell, through a messenger, caused the deed of assignment to be delivered to the probate court of the county, and. the other to himself, to be delivered at the office of the recorder to be recorded; the former being delivered to the probate court four minutes before the latter was delivered at the office of the recorder.
The house aud lot was sold by Campbell for the sum of $18,275; the sale was confirmed by the court,'and Campbell admitting that the deed to him was intended as a security for the money he had loaned and advanced to Simmonds, the general creditors claimed that he was not entitled to any priority over them upon distribution of the fund — the deed to him not having been recorded until after the assignment had been made and filed in the office of the probate court.
The matter was decided by the probate court in favor of Campbell, and the creditors appealed to the court of common pleas, where the matter was again decided in his favor. The latter court having made a finding of facts substantially as stated, its judgment was affirmed on error by the district court; and the creditors now prosecute this *214 proceeding to reverse the several judgments so rendered against them.
It is claimed in argument by the defendant in error, that this ease should be governed by the decision in Gill v. Pinney, 12 Ohio St. 38, where it wms held that a mortgage filed for record after the death of the mortgagor secured a lien to the mortgagee against the general creditors of the estate. If that ease is right in principle, it is difficult to perceive why it should not apply to a case where a duly executed mortgage is not filed for record until after an assignment has been made by the mortgagor. A different view seems, however, to have been taken in the subsequent decisions of this court as to chattel mortgages, not available as against general creditors, from the omission of certain statutory requirements, and which defects existed at the time of the assignment. Hanes v. Tiffany, 25 Ohio St. 549; Kilbourne v. Fay, 29 Ohio St. 264. But no conclusion has been reached, either way, upon this question, by a majority of the court.
There is, however, another question in the case; that is, whether the deed to Campbell need have been recorded to entitle him, upon distribution, to a preference over the claims of general creditors, as less than six mouths had expired from the execution of it to the time of the assignment ? The majority are of opinion that this question should be answered in the negative.
The deed, although intended to secure Campbell for moneys he had advanced, paid, and assumed for Simmonds, was, nevertheless, absolute in form, and conveyed to him the legal title to the premises in fee-simple. It is not a proper mortgage. In equity it is construed to be such for the purpose of preventing imposition and injustice; but at law it is simply what, on its face it purports to be, an absolute conveyance in fee-simple. Hughes v. Davis, 40 Cal. 117; 1 Jones Mortg., § 339. And no other or different construction will be placed on the deed, unless necessary to accomplish the ends of justice. 1 Jones Mortg., § 321. To do otherwise *215 would be foreign to the spirit of equity, and would violate the plainest principles upon which equity jurisprudence has always been administered by the courts. No one of the maxims of equity is of more unvarying application than that “ he who seeks equity must do equity.”
The remedial right of the grantor is not that of foreclosure, but of redemption merely, which can only be exercised upon the principle stated. White v. Lucas, 46 Iowa, 319; Cowing v. Rogers, 34 Cal. 648. Hence the grantor on redeeming or seeking a reconveyance must comply with his agreement and pay the amount due. 1 Jones Mortg., § 336. The only proper decree, in such .cases, is for a reconveyance of the land upon the payment of the amount found due the grantee. Campbell v. Dearborn, 109 Mass. 130; Westlake v. Horton, 85 Ill. 228. Aud, differing from an ordinary mortgage, a reconveyance is required to reclothe the grantor with the legal title, although payment has been made. McCarthy v. McCarthy, 36 Conn. 177.
In Baird v. Kirtland, 8 Ohio, 21, it was held that where there is an absolute conveyance of land, intended as a mortgage, and a separate covenant by the grantee to re-convey to the grantor, on the payment of a sum of money, the equity of redemption remaining in the grantor can not be sold on execution at law; and the holding was placed on the ground that the judgment debtor did not have a legal title to the land. Hitchcock, J., in delivering the opinion, says: “ In equity, he” the grantor “ might upon such payment, compel a reconveyance; but at law he had no interest in the land — therefore the judgment of the complainants could not operate as a lien upon the land.”
It may be conceded that the principles above stated apply without qualification as between the parties to the deed, whilst it would be contended that their application to a case arising between the creditors of the grantor and his grantee is prevented by the policy of our registration laws. It has been the purpose of our reasoning to show that there is a marked difference between an absolute deed held to be a mortgage and a deed that is intended to be, *216 and is, a mortgage upon the face of it; and that this'difference consists in the remedial rights of the parties and in the principles upon which such relief is granted. If this difference exists, and plainly as between parties it does, then it is difficult to see how those who may desire to succeed to the rights of the maker of an absolute deed, which in equity maybe a mortgage, can do so, as creditors or otherwise, without invoking the same equitable powers in the court, that could only have given relief to the grantor himself; and if they can not, then upon what equitable exception could relief be rendered them without complying with the maxim, that would have been applicable to him, that he who seeks equity must do equity; as they, as well as he, must ask that the deed be declared to be something other than what on its face it purports to be; and such relief can only be awarded in the exercise of its equitablejurisdiction by a court. The maxims of equity is the life of its system of remedial justice, and a judgment disregarding any of its maxims, where applicable, is not a judgment in equity.
In commenting on the maxim, “ he who seeks equity must do equity,” Prof. Pomeroy quotes with approval the following language of an eminent judge: “ The court of equity refuses its aid to give to the plaintiff what the law w-ould give him if the courts of common law had jurisdiction to enforce it, without imposing upon him conditions which the court considers he ought to comply with, although the subject of the condition should be one which the court would not otherwise enforce,” and adds : “In this narrow and particular sense the principle becomes a universal rule governing the courts of equity in administering all kinds of equitable relief, in any controversy where its application may be necessary to work outcomplete justice.” IPom. Eq. Juris., § 385. The following are some of the many instances in which the principle has been applied: Where a borrower brings a suit in equity for the purpose of having a usurious bond or other security that is void by statute, delivered up and canceled, the relief will be granted only upon condition that the plaintiff himself does equity, *217 by repaying to Ms creditor what is justly and in good faith due, that is, the amount actually advanced with lawful interest, unless indeed the statute has gone so far as to expressly prohibit the court from imposing such terms as the price of its relief. 1 Pom. Eq. Juris., § 891, and cases cited in note 2.
So in Heacock v. Swartwout, 28 Ill. 291, where an absolute conveyance was ascertained to be a security for a usurious loan, the court allowed the grantor to have a conveyance of the land on paying the grantee the original money loaned at six per cent, but denied him the benefit of the forfeitures given by the statute, saying : “ When a party asks the court of equity for relief from the letter of his contract, which he could not obtain at law, the court will impose terms upon him to do equity.”
See also Cowing v. Rogers, supra, where upon the same principle the grantor was required to pay in gold coin, as the condition upon which the court would decree a reconveyance of land held by the grantee ulider a deed absolute in form, but found to be a security.
It appears to us the same equitable principle must apply to the case of a creditor seeking the aid of equity to have a deed of his debtor, absolute in form, declared a mortgage; the relief can only be granted upon condition that he pay the' grantee the amount with interest justly due him. The relief will not be granted that his claim m&j, when the relief is granted, be declared a superior lien to that of the grantee as a consequence of his omission to record the deed as a mortgage.
So far as our examination has gone, we have not been able to find any case arising between creditors and the grantee in which the application of these principles has been regarded as disturbed by the policy of the registration laws. Whilst it is uniformly held that a creditor may subject the grantor’s equity of redemption to the payment of his claim, it is always with the qualification that it must be done upon the payment of the amount justly due the grantee. Van Buren v. Olmstead, 5 Paige, 9.
*218 In Westfall v. Westfall, 16 Hun (N. Y.), 541, the action was on behalf of the widow; in Judge v. Reese, 24 N. J. Eq. 387, it was by a judgment creditor; and so in Allen v. Kemp, 29 Iowa, 452; in De Wolf v. Strader, 26 Ill. 225; in Marshall v. Stewart, 17 Ohio, 356; and in Dwen v. Blake, 44 Ill. 135.
If it be said, that the question was not made in these cases, the answer is that they are, nevertheless, evidence of what the law has been and is regarded to be. Marshall v. Stewart, supra, was decided in 1848; the statute as to recording mortgages having been enacted in 1831, and the declaratory act in 1838. 1 S. & C. 458; Id. 469.
In Christie v. Hale, 46 Ill. 117, the court observes that it has never been held where a conveyance is made in good faith as security for a debt, that because the grantee could not claim all that he seemed to hold by the deed, he should not hold a lien subject to the equities of the grantor.
The observation in Clark v. Condit, 18 N. J. Eq. 362, was based upon the statutes of that state, which provide that a every deed of mortgage or conveyance in the nature of a mortgage” must be recorded to make it available against subsequent bona fide purchasers and mortgagees without notice. Revised Statutes N. J. 705-6.
It is important in this connection to notice the language of our own statutes on the subject. Section 4133, Revised Statutes, provides that “ all mortgages executed agreeably to the provisions of this chapter” (Chap. I, Tit. iv, Part 2) shall take effect from the time they are delivered for record; and the next section provides that “ all other deeds and instruments of writing for the conveyance or incumbrance of any lands” executed agreeably to the provisions of the same chapter shall be recorded in six months from the date thereof, and if not so recorded they are deemed to be fraudulent as against any subsequent bona fide purchaser without notice. We refer to the provisions of this section as they were prior to the amendment of May 4, 1885 (82 Ohio L. 230).
Inasmuch as the latter section recognizes the existence *219 of a deed for the incumbrance of lands, that would take effect upon its execution and delivery, as a deed for the conveyance of lands, it is fair to construe the former section as simply embracing mortgages that, in law, are such upon the face of them.
The deed held to be a mortgage and required to be recorded as such in Woodruff v. Robb, 19 Ohio, 212, was clearly so upon the face of it; for, although made to a trustee, it was by the clause of defeasance to become void on the payment of the money by Robb. 1 Jones Mort., § 62. And so within the act as to the record of mortgages.
Here there was no such provision in the deed; it was absolute upon its face. The proposition of Campbell, upon which the conveyance was made to him, was for a purchase of the property at the estimated value of $18,000. This he was to pay by assuming a mortgage of $12,580 on the premises, and an indebtedness of $320 to Campbell’s firm ; the balance he proposed to pay by the allowance of his own. claim of $2,100 for money lie had loaned S., and cash, $3,050; then S. was to remain in the premises for one year rent free, and if he did not then repay the- money advanced, with interest, he was to surrender the premises; and if he did Campbell was to reconvey them to. Simmonds. There was no promise by Simmonds to pay; it was his privilege to do so and claim a reconveyance of the property. The absence of a promise to pay and of a provision in the deed that upon payment the conveyance should be void, marks the distinction between a proper mortgage and an absolute conveyance, with a right reserved to the grantor to claim a reconveyance upon the payment of money.
The fact that the deed had not been recorded at the time of the assignment can avail nothing, because it was recorded within a few minutes after, and within the time allowed by law. And as said by Chief Justice Marshall, in Shirras v. Caig, 7 Cranch, 50: “If subsequent purchasers without notice, sustain an injury within the time allowed for recording a deed, the injury is to be ascribed to the law, not to the individual who has complied with its requirements.”
*220 There is no ground here for saying that any body was injured by a failure to record the deed sooner than it was recorded. After paying the charges and liens upon the property, the residue is insufficient to pay Campbell the amount found due him for moneys paid and advanced at the time of the conveyance; and it is not shown that any of the creditors had sought to acquire a lien upon'the property that would have been available but for this deed. The only interest they have in the property is that acquired by the assignment.
Transactions which in equity are construed as mortgages, arise under a great variety of forms, to many of which, if not all, it would be difficult to apply the statutes applicable to the registration of mortgages proper. Thus, where a land agent purchased lands at a government sale for one who had a right in them, simply recognized by the custom of settlers, and took the title to himself as a security for the money advanced by him to the settler (Rogan v. Walker, 1 Wis. 527), and where the owner of a certain tract of land, obliged himself to pay a certain sum of money in a certain time, and in default thereof to convey the lauds (Cotterell v. Long, 20 Ohio, 464), and where a purchaser at a sheriff’s sale, made the purchase and took the deed under an arrangement with the judgment debtor, whereby the purchaser was to advance money and pay off certain claims agáinst the debtor, and to convey to the debtor, when reimbursed, for the moneys so advanced (Sweetzer’s Appeal, 71 Pa. St. 264), and the absolute assignment of a mortgage as a collateral security (Pond v. Eddy, 113 Mass. 149), have each been held to constitute a mortgage.
As a rule, the character of such instruments is only ascertained and determined after more or less litigation, and the decree no doubt frequently works a hardship to the grantee, who had taken the deed and acted upon what he had regarded as a fair construction of the transaction; and, as between himself and a creditor, to go beyond the principles just stated, and apply the consequences that .would *221 follow at law from a failure to register the deed as a mortgage, would, as a rule, shock the conscience of any court. Nor do we see any reason why Campbell or any other grantee should be dealt with any more severely for voluntarily doing what he might have been compelled to do at the end of a suit. The difference^ if any, should, in such cáse, be in his favor.

Judgment affirmed.

Spear, J., dissents.