State Life Insurance Company, Appellee, v. Victor L. Freeman et al., Defendants. William Byrnes et al., Impleaded as "Unknown Owners," Appellants.

Gen. No. 41,409.

Opinion filed January 22, 1941. Rehearing denied and opinion slightly modified February 6, 1941.

CHARLES A. CHURAN, of Chicago, for appellants.

GEORGE H. BATCHELOR, of Indianapolis, Ind., and POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chicago, for appellee.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an appeal from a decree of foreclosure entered in the circuit court of Cook county, Illinois, on February 16, 1940, by certain defendants who are appellants here, and who were made parties by an amendment to the complaint. The original complaint was filed on August 1, 1938, by the plaintiff, the State Life Insurance Company, a corporation of Indiana, against Victor L. Freeman and others to foreclose a certain trust deed dated June 10, 1927, from Emma W. Meschke and her husband, August F. Meschke, to Chicago Title and Trust Company, trustee. The trust

deed was made to secure an original indebtedness of $7,500, evidenced by 3 principal notes, A, B and C. Notes A and B were subrogated to Note C which was for $7,000 and of which the plaintiff was the legal holder. This note was for 5 years.

The premises mortgages are located at 6239 Evans avenue, Chicago, on the south side of the city in what is commonly known as the Washington Park Restricted Area, or Washington Park Subdivision. Note C not having been paid, an extension agreement in writing was entered into on June 9, 1932, between one Virginia V. Freeman, the then-owner of the premises as party of the first part and the plaintiff as party of the second part, extending the payment of the unpaid balance of principal note C for the term of 5 years from June 9, 1932. Said extension agreement contained the following provision:

"And Whereas, this extension agreement may be declared void by the party of the second part within ninety days after date of recording if subsequent investigation shows that the title to the above described property is not as herein set forth, or that there are any liens that affect the validity of this trust deed as extended."

On June 10, 1937, another extension agreement in writing was executed between the defendant, Victor L. Freeman, the then-owner of said premises, as party of the first part and the plaintiff as party of the second part, extending the time of payment of the unpaid balance (then $5,000) of said principal note C, to June 1, 1942. Both of said extension agreements were recorded. The second extension contained the following clause;

"And Whereas, this extension agreement may be declared void by the second party without notice to the first party within ninety days after date of recording if subsequent investigation shows that there are

any liens that affect the validity of this trust deed as extended, or that the title to the above described property is not as herein set forth.''

On March 9, 1939, by leave of court the plaintiff filed an amendment to its complaint, alleging that subsequent to the making of the trust deed and on or about September 30, 1927, said Emma Meschke and August F. Meschke, her husband, together with certain of the owners of adjoining and adjacent property entered into agreements or covenants prohibiting the use of or sale of the premises involved to negroes, said agreements or covenants being dated September 30, 1927, and recorded February 1, 1928, in the office of the recorder of deeds of Cook county as Documents Nos. 9914711 to 9914714, both inclusive.

The amendment further alleges that the rights and interests of the parties to said covenants were at the time of the signing thereof and now are subordinate, subject, junior and inferior to the lien of the trust deed being foreclosed; states that the parties to said agreements and covenants are more than 250 in number; that it is impracticable to make all the owners and persons interested in the properties covered by said agreements parties to the complaint; that it is necessary that the signers and parties interested in said restrictive agreement be brought into court either in person or by representation so that all the parties interested or claiming any interest may be bound by each and every determination made by the court with respect to the matters presented to the court in connection with said foreclosure. The amendment then names ten property owners in the Washington Park Subdivision, being either parties who signed said restrictive agreement or their successors in title, as parties defendant as representative of and for all signers of said agreements and covenants and all other persons who do or may claim some interest in or lien upon the real estate therein described as signers of

said agreements or covenants restricting the use or sale of the premises described in said agreements or covenants to negroes, as parties under the name and description of ''Unknown Owners.'' Publication was had against ''Unknown Owners'' having or claiming to have an interest or lien upon the real estate described in said complaint by reason of said agreements.

On June 3, 1939, appearance, answer and counterclaim were filed by Charles A. Churan on behalf of defendants (appellants), William Byrnes, Margaret Byrnes, his wife, Ethel W. Olson, Henry Mallman, William Fahsbender, Henrietta Fahsbender, Della L. Fanselow, William Turner, Robert N. Griffin, Mayme Griffin, Charles Sorge, Mary Sorge, Charles Will, Emily Will and Rose Davis, impleaded herein as ''Unknown Owners,'' and on July 13, 1939, an order was entered which provided that the answer and counterclaim of these defendants impleaded herein as ''Unknown Owners'' on behalf of themselves and on behalf of all other signers of said restrictive agreement dated September 30, 1927 (describing same) should be included within those defendants heretofore impleaded as representatives of the class, and the court finds that these defendants (appellants here) naming them are representatives of and sufficient to implead as a class all the signers of said agreements and covenants, and of all parties having or claiming any interest in any of the properties described.

In substance, the defendants admitted the execution of the restrictive agreement pleaded by the plaintiff's amendment and recorded February 1, 1928, but say that more than 500 white persons owners of real estate in the area known as Washington Park Subdivision between Cottage Grove avenue on the east, South Park avenue on the west, Sixtieth street on the north and Sixty-third street on the south executed and acknowledged said restrictive agreement, which was a cove-

nant running with the land for the benefit of the land; that the defendant Emma W. Meschke, and her husband executed said agreement and that said covenant provides that it should remain in full force and effect until January 1, 1948, and thereafter until abrogated by a written recorded agreement of the owners of 75 per cent of the frontage, and assert that said restrictive agreement is now in full force and effect and binding upon them and the plaintiff, and on the premises being foreclosed and deny that it is subject, junior and inferior to the lien of the trust deed. They pray that the restrictive agreement be found by the court to be in full force and effect and binding on the premises being foreclosed and whatever relief the plaintiff is found to be entitled to should be subject to the covenants and restrictions contained in said restrictive agreement.

By their counterclaim these defendants pray that the decree of foreclosure and any sale thereunder should be made subject to the restrictions and covenants contained in said restrictive agreement. The cause was referred to a master in chancery who filed his report finding against the contentions of these defendants and counterclaimants over objections filed, which were made exceptions in the circuit court, and decree of foreclosure was entered on February 16, 1940, by the circuit court sustaining the master's report and finding and decreeing among other things that the rights and interests of all the signers of said agreement and persons taking through or under them and all parties interested in said agreement or covenant are junior, inferior, subject and subordinate to the lien of the plaintiff. The decree further orders the sale of the premises and if no redemption be made from the sale that "the grantee or grantees in such Master's deed of conveyance . . . take the premises free and clear of all liens, encumbrances, covenants and obstructions created or appearing of record

from and after the recording of the trust deed foreclosed herein, etc." A sale of said premises to the plaintiff reported by the master for the full amount of the decree, and master's certificate was issued. Sale was approved by the court by order entered April 29, 1940.

The counterclaimants filed a counterclaim asking for affirmative relief. It set up the restrictive agreement and the covenants against sale, use or occupancy by negroes and other pertinent provisions. It was alleged that in the agreement the signers thereof agreed, that "said covenants and restrictions should be appurtenant to and running with the land, and might be enforced by any of the parties thereto by any permissible legal or equitable proceedings including proceedings to enjoin violation and for specific performance." The counterclaim further alleges that said agreement was signed by more than 500 white persons, owners of land on Evans, Langley, Champlain, St. Lawrence, Rhodes, Eberhart, Vernon and South Park avenues between 60th and 63rd streets and on 60th, 61st and 62nd streets between South Park and Cottage Grove avenues in the city of Chicago; that it was signed, sealed and acknowledged and thereafter duly filed for record on February 1, 1928, and recorded; that the area included in said restrictive agreement, except on parts of 62nd street, is improved by valuable apartment buildings of from 2 to 36 apartments of great value; that about 80 per cent of the improvements are two-story apartment buildings, one apartment of which is occupied by the signers as their homes and the other apartments rented by whites. The counterclaim further alleged that the defendants are the owners of real estate on Evans avenue within the restricted area; that there are no negroes residing on or owning any real estate on either side of Evans avenue between 61st street and 63rd street; that on the date of the execution of said restrictive agreement,

Emma W. Meschke, mortgagor, was the owner of the premises described in the plaintiff's complaint; that said Emma W. Meschke executed said restrictive agreement, and that up to date no negro has owned, occupied or leased any part or portion of said premises.

The counterclaim then alleges the execution of the extension agreements, and that the plaintiff had actual notice when said extension agreements were entered into that the premises were restricted by said restrictive agreement, and that it was a covenant running with the land; that by entering into said extension agreements the plaintiff became bound by covenants of said restrictive agreement. The counterclaim prays judgment that said restrictive agreement recorded February 1, 1928, be declared in full force and effect against the premises foreclosed herein, and that any decree of foreclosure entered in this cause and any sale of said premises under said decree be made subject thereto, and for such other and further relief as to the court shall seem meet.

The plaintiff's answer to the counterclaim in substance is that the lien of the trust deed and the right, title and interest of purchaser at a sale pursuant to any decree of foreclosure is prior and superior to any and all rights and interests of the defendants under said agreement, say that even if plaintiff had knowledge of the execution or recording of the restrictive agreements at the time the extension agreements were made, such knowledge would not subject the prior lien of the plaintiff to any right or interest of the defendants under the restrictive agreements.

The plaintiff's answer denies that the actions mentioned were class or representative suits, or that plaintiff was a party thereto in person or by class representation; that the counterclaim is insufficient at law, that the court is without jurisdiction of the subject

matter and that the matters set forth in counterclaim are not germane to the matters and things set forth in the complaint, nor do they arise out of the same transaction or subject matter, and prays that the counterclaim be dismissed.

The defendants (counterclaimants) filed a reply to plaintiff's answer in which they alleged that the restrictive agreement is a covenant running with the land and for the benefit of each and every property thereby restricted against negroes; is in full force and effect and should be protected as an enhancement of the value of all the properties covered by said restrictive agreement; that by the execution of the extension agreements the plaintiff acknowledged that the premises were subject to the restrictive agreement. Defendants further deny that the prior actions pleaded in the counterclaim as *res judicata* were not class or representative suits, but state that each and every one of said actions was brought by the plaintiffs therein on behalf of themselves and on behalf of all other property owners in said restricted area who might be similarly affected by a violation of said restrictive agreement.

As stated in the appellants' (defendants) statement of the case, the appellants were made parties as representatives of 500 white property owners who had signed an agreement or covenant not to sell or lease to negroes within the restricted area. Plaintiff's amendment that was filed prayed that the court find that the trust deed was a first and superior lien and that the restrictive agreement was subject to the trust deed, and that the premises be sold free and clear of the restrictive agreement. The master and the court sustained the plaintiff's contentions and the decree provided that the rights and interests of all the signers of said agreement and persons taking through or under them and all parties interested in said agree-

ment or covenant are junior, inferior, subject and subordinate to the lien of the plaintiff. The premises in question were sold and the sale approved by the court.

By the counterclaim of the defendants, affirmative relief was sought, and it was prayed that said restrictive agreement, as a "covenant running with the land," should be protected, and that the decree should provide that the sale should be subject to the covenant. The plaintiff brought these defendants in, and the burden of showing that the restrictive agreement was subject to the trust deed was on it. The restrictive agreement covers the territory as described hereinbefore. The property foreclosed is at 6239 Evans avenue and Evans avenue is the first street west of Cottage Grove avenue.

The defendants urged three propositions; First, that the restrictive agreement, being a matter of record, is a covenant running with the land, or as some courts have called it, a negative easement which cannot be wiped out by a foreclosure, and is binding on the holder of the mortgage even though the restrictive agreement was subsequent to the mortgage; Second, that the plaintiff in this case as the holder of the mortgage is particularly bound by and to the restrictive agreement because subsequent to the execution of the agreement Emma W. Meschke (who executed the mortgage and the restrictive agreement) conveyed the premises to Virginia V. Freeman, and that more than 4 years after the restrictive agreement was recorded, the plaintiff in the case as the legal holder of the incumbrance entered into an extension agreement which (among other things) provided that the extension agreement may be declared void by the plaintiff within ninety (90) days after date of recording if subsequent investigation shows that the title to the premises is not as therein set forth, or that there are any liens that affect the validity of the trust deed as extended,—that later, more than 7 years after the restrictive agreement was recorded, the mortgage was

again extended, and an extension agreement executed between the plaintiff and defendant Victor L. Freeman, which again made the extension agreement subject to be made void by the plaintiff within 90 days after recording, "if subsequent investigation shows that there are any liens that affect the validity of the trust deed as extended, or that the title" to the property was not as therein set forth; and Third, that the restrictive agreement has been found by the decree of the superior court entered in the case of *Burke v. Kleiman,* October 2, 1933, and by decree of the same court in *Penoyer v. Cohn,* on May 5, 1936, both of which cases were class actions, to be in full force and effect, and that all conditions precedent to the enforceability of said agreement had been complied with prior to the recordation thereof; that the Appellate Court in *Burke v. Kleiman,* 277 Ill. App. 519 and in *Lee v. Hansberry,* 291 Ill. App. 517, and the Supreme Court in *Lee v. Hansberry,* 372 Ill. 369, construed this very agreement and held it to be in full force and effect. However, the *Lee v. Hansberry* case (*supra*) was in the Supreme Court of the United States upon the allowance of certiorari, and the opinion in that case reverses the Supreme Court of Illinois. More will be said by this court in this opinion regarding the *Lee v. Hansberry* case.

The plaintiff's reply in this action to defendants' contentions calls our attention to defendants' assertion that the restrictive agreement having been recorded (though admittedly after the execution and recording of the mortgage) is a covenant running with the land or "negative easement," binding the holder of the prior mortgage (even though such holder never signed or consented to it), and following the real estate into the hands of a purchaser at sale under the decree foreclosing the mortgage. Plaintiff suggests that there is no authority cited in support of this rather unique proposition, and contends that there is no support, in fact, either in the reported decisions

or under general rules of law, and that it is contrary to every established rule on the subject. Plaintiff calls our attention to 2 Jones on Mortgages, 8th Ed., pp. 138, 139, sec. 836, contending that the general rule is there stated, with which the decisions of the Illinois courts are, and always have been, in harmony. It is there stated;

"Of course the mortgagee is not affected by any act of the mortgagor in passing any right of his in the premises to third persons, whether by deed, or by confession of judgment, or otherwise. He cannot bind the mortgagee by any contract or deed prejudicial to his title. He cannot create an easement in the land to the prejudice of the rights of the mortgagee. Any rights in the mortgaged property which are acquired through the mortgagor are subject to the lien of the mortgage." Plaintiff again calls attention to the same section, in which the text writer states:

"Neither can the mortgagor and his grantee, by any subsequent arrangement between themselves, affect the mortgagee's lien, nor prevent its operating to the full extent conferred by the mortgage," and calls attention to the citations given by the text writer in support of this section. Then again in 3 Jones on Mortgages, 8th Ed., pp. 621–627, it is said:

"§ 2122 (1654). TITLE CONVEYED—INTERVENING LIENS AND INCUMBRANCES EXTINGUISHED.—As the title of the purchaser relates back to the time of the execution of the mortgage, it does not matter to him what disposition the mortgagor may afterward have made of the property if the foreclosure is perfect. All conditions and reservations and easements, all claims of creditors, as well as all junior liens, mortgages or other incumbrances, afterward imposed upon the property are extinguished, and the purchaser under foreclosure of the senior mortgage takes the property free therefrom. In this respect the purchaser's rights are the same whether the sale be under a decree of a court of equity, under a judgment in scire facias, or

under a power in the mortgage or trust deed. The title takes effect by virtue of the original deed; the sale carries that title, and cuts off all liens and interests created subsequent to the mortgage. . . .

"Title acquired by foreclosure relates back to the date of the mortgage, so as to cut off intervening equities and rights. If all subsequent purchasers and incumbrancers are made parties to the bill, the title under the mortgage foreclosed is perfected to an absolute one. In such case the purchaser at foreclosure sale acquires all the right, title and interest of the mortgagor at the time of the making of the mortgage; including his rights as landlord under a lease; together with any after-acquired right. . . . " In support of the foregoing the following cases are cited; *McMahill v. Torrence,* 163 Ill. 277, 45 N. E. 269; *Ballinger v. Bourland,* 87 Ill. 513; *Taylor v. Kearn,* 68 Ill. 339. Further, it has been called to our attention in 2 Reeve, Illinois Law of Mortgages and Foreclosures, p. 808, sec. 718, that "in a foreclosure proceeding to which all proper and necessary parties have been brought in, the purchaser acquires all the rights in the mortgaged premises which the mortgagor had at the time of the execution of the mortgage, entirely unaffected by the title or lien of purchasers or incumbrancers subsequent to the recording of the mortgage, or with notice." Further, in sec. 719, the same writer says:

"The title acquired by the grantee in a master's deed relates back to the execution of the mortgage, and the purchaser takes the title as then existing in the mortgagor, divested of sales, liens, or leases subsequently made by the mortgagor or by persons claiming under him," and in support thereof cites *Cooper v. Corbin,* 105 Ill. 224, 234; *Taylor v. Kearn,* 68 Ill. 339, 344; *Bartlett v. Hitchcock,* 10 Ill. App. 87, 89.

Plaintiff cites in support of its position the case of *Dorff v. Bornstein,* 277 N. Y. 236, 14 N. E. (2d) 51, 53, where the rule is stated as follows:

"In situations such as arose in this case there are fundamental principles which we are bound to recognize and which equity cannot set aside. A bona fide purchaser (other than the owner) on an unconditional sale of real property pursuant to a regular foreclosure acquires a clear and absolute title as against all parties to the suit and their privies which relates back to the date of the mortgage so as to cut off all intervening rights and equities. 3 *Jones on Mortgages,* 8th Ed., §§ 2121, 2122 (1653, 1654); *Chicago, D. & Vincennes R. R. Co. v. Fosdick,* 106 U. S. 47, 27 L. Ed. 47; *Smith v. Gardner,* 42 Barb. 356, 366; *Pardee v. Steward,* 37 Hun 259, 262; *Jaycox v. Smith,* 17 App. Div. 146, 45 N. Y. S. 299; *Rector, etc., of Christ Protestant Episcopal Church v. Mack,* 93 N. Y. 488, 492, 45 Am. Rep. 260; *Sautter v. Frick,* 229 App. Div. 345, 242 N. Y. S. 369, affirmed, 256 N. Y. 535, 536, 177 N. E. 129; *Civil Practice Act,* § 1085." Also, in the case of *Norfolk Building & Loan Ass'n v. Stern,* 113 N. J. Eq. 385 (cited by plaintiff), the principal defendant in 1922 mortgaged the property to plaintiff. Thereafter, by several mesne conveyances, the mortgaged premises were conveyed to Stanley-Fabian Company. In 1929, it conveyed the property to City Investment Company, subject to plaintiff's mortgage, and also to a covenant created by Stanley-Fabian Company subsequent to the execution and delivery of the plaintiff's mortgage, restricting the use of the property by prohibiting its use for theater purposes. In the opinion of the court, it is said:

"Complainant's mortgage covered the entire property, and its bill prayed for sale of all that the mortgage covered. The conveyance to Stanley-Fabian Company was of the interest the mortgagor had remaining after his mortgage to complainant, and that interest Stanley-Fabian Company conveyed away, attempting, however, to charge such interest with a restrictive covenant for the benefit of other property

in which it was and is concerned. When complainant filed its bill, it was required to bring into court every subsequent mortgagee and incumbrancer in order that their rights might be established, disposed of by decree, and their liens transferred from the property to the proceeds of sale. This is the universal practice. Upon such Bill a decree is entered and a sale made which vests in the purchaser all rights and equities of the parties complainant and defendant'' (citing a number of cases). The court further said: ''The complainant herein followed the proper procedure by making Stanley-Fabian Company a defendant because of its interest in the restrictive covenant, and in the regular course of procedure the restriction would be cut off and the purchaser at foreclosure sale would take title unincumbered by it, but Stanley-Fabian Company would reverse the orderly procedure and give the covenant priority over the purchaser's title. . . . To sell property subject to any restriction as to its use usually affects its sale price. On the mortgaged land is a theater building, and the restriction with which we are concerned provides, in effect, that the mortgaged premises shall never be used for the exhibition of motion pictures, nor, after the present building is demolished or substantially altered, for theatrical performances, without the consent of Stanley-Fabian Company. To decree that property adapted for theater purposes shall be sold with a prohibition against such use would, under the facts of this case, be not only contrary to established foreclosure practice, but would seriously affect the rights and liabilities of parties to this suit.'' Upon appeal to the court of last resort of New Jersey, this decision was affirmed, 115 N. J. 282.

Defendants cite a number of Illinois appeal cases on the question as to the relative rights of a prior mortgagee and subsequent signers of restrictive covenants, and as to whether a restrictive agreement is binding

upon the mortgagee where it is executed subsequent to the date of the execution and delivery of the mortgage. The cases of *Willoughby v. Lawrence,* 116 Ill. 11, 21; *Metcoff v. Dahlquist,* 252 Ill. App. 222; *Atwood v. Chicago, M. & St. P. Ry. Co.,* 229 Ill. App. 71 and *Richmond v. Bennett,* 205 Pa. 470, are cited.

The plaintiff's reply to the suggestion that the extension agreements that were entered into in the instant case have any binding force upon the question that this restrictive covenant runs with the land and is binding upon the mortgagee—refers to defendants' assertion that the plaintiff in some way became estopped to assert that the restrictive agreement is not binding upon it, as a mortgagee who did not sign the agreement or consent thereto, because after the recording of the agreement, the plaintiff, as the legal holder of the mortgage twice entered into agreements extending the time of payment of the mortgage debt.

Plaintiff then goes on to state that just what detriment the defendants have suffered by reason of the plaintiff's omission to act is not clear; but that it is clear, however, that in the absence of such detriment suffered by one who has relied upon the alleged omission to act, there can be no estoppel. There is not one word in the record about anything the defendants have done or failed to do in reliance upon the plaintiff's omission to foreclose in 1932 or 1936, or in reliance upon its having become by some implication a party to the restrictive agreement.

Plaintiff further suggests that the extension agreements were exactly what the term implies—simple agreements whereby the time of payment of the mortgage debt was extended upon the original security without any release of the original mortgage, taking of a new one, or renewal of the mortgage notes. The extension of the time of payment of a mortgage in no way impairs the mortgage lien as against subsequent incumbrancers or as against any other parties sub-

sequently dealing with the. title. (2 Jones on Mortgages, 8th Ed., pp. 675, 676, sec. 1202, citing the following cases: *Roberts v. Doan,* 180 Ill. 187; *Campbell v. Trotter,* 100 Ill. 281; *Shaver v. Williams,* 87 Ill. 469; *Christie v. Hale,* 46 Ill. 117; *McChesney v. Ernst,* 89 Ill. App. 164, aff'd 186 Ill. 617; *Roberts v. McNeal,* 80 Ill. App. 536.)

The defendants' theory seems to be that having extended payment of the mortgage on terms which permitted plaintiff to declare the mortgage still in default if there turned out to be any flaws in the title (in the sense of liens affecting the lien of the mortgage) the plaintiff is in the position it would have been in had it made a new mortgage on property already subject to the restriction. If the plaintiff had made a new mortgage and taken for the mortgage debt new notes secured by a totally new mortgage, such new mortgage still would have been prior to the restrictive agreement, or to any other lien, incumbrance or servitude put on the property subsequent to the recordation of the mortgage securing the debt so renewed. Plaintiff cites the case of *First Trust Joint Stock Land Bank of Chicago v. Hickok,* 288 Ill. App. 131, in which the court said:

"It is a general rule that the cancellation of a mortgage on the record is not conclusive as to its discharge, or as to the payment of the indebtedness secured thereby, and where the holder of a senior mortgage discharges it of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless such intention upon his part is indicated by the circumstances of the transaction, or shown by extrinsic evidence. *Roberts v. Doan,* 180 Ill. 187; *Campbell v. Trotter,* 100 Ill. 281; *Christie v. Hale,* 46 Ill. 117; *Shaver v. Williams,* 87 Ill. 469; 33 A. L. R. 149; 98 A. L. R. 843. . . . ''

Having considered the defendants' contention, and the authorities cited in support thereof, we cannot agree with the defendants' assertion that the restrictive agreement, which was executed and recorded subsequent to the execution and recording of the mortgage, does by that fact make the land subject to the restrictive agreement which defendants claim to run with the land—or, in other words, a negative easement. A bona fide purchaser, other than the owner, on an unconditional sale of real property pursuant to a sale of foreclosure, acquires a clear title which relates back to the date of the mortgage so as to cut off all intervening rights. As we have indicated, the fact that the extension agreements were executed and recorded subsequent to the date of the restrictive agreement in the instant case, does not have a binding force upon the mortgagee, nor estop the mortgagee to assert that the restrictive agreement is not binding upon it, as the mortgagee did not sign the agreement nor assent thereto. For the reason given, the court did not err in this respect.

In the *Hansberry v. Lee* case, 61 S. Ct. 115, the Supreme Court of the United States calls attention that it there considered the question whether the Supreme Court of Illinois, by its adjudication that petitioners in this case are bound by a judgment rendered in an earlier litigation to which they were not parties, has deprived them of the due process of law guarantied by the fourteenth amendment to the Constitution of the United States. The respondents brought this suit in the circuit court of Cook county, Illinois, to enjoin the breach by petitioners of an agreement restricting the use of land within a described area of the city of Chicago, which was alleged to have been entered into by some 500 of the land owners. The agreement stipulated that for a specified period no part of the land should be "sold, leased to or permitted to be occupied by any person of the

colored race,'' and provided that it should not be effective unless signed by the ''owners of 95 per centum of the frontage'' within the described area. The bill of complaint set up that the owners of 95 per cent of the frontage had signed; that respondents are owners of land within the restricted area who have either signed the agreement or acquired their land from others who did sign and that petitioners Hansberry, who are negroes, have with the alleged aid of the other petitioners and with knowledge of the agreement, acquired and are occupying land in the restricted area formerly belonging to an owner who had signed the agreement. The court in that case said:

''The Supreme Court of Illinois, upon an examination of the record in *Burke v. Kleiman,* 277 Ill. App. 519, found that that suit, in the Superior Court of Cook County, was brought by a landowner in the restricted area to enforce the agreement which had been signed by her predecessor in title, in behalf of herself and other property owners in like situation, against four named individuals who had acquired or asserted an interest in a plot of land formerly owned by another signer of the agreement; that upon stipulation of the parties in that suit that the agreement had been signed by 95 per cent of all the frontage owners, the court had adjudged that the agreement was in force, that it was a covenant running with the land and binding all the land within the described area in the hands of the parties to the agreement and those claiming under them including defendants, and had entered its decree restraining the breach of the agreement by the defendants and those claiming under them, and that the appellate court had affirmed the decree. It found that the stipulation was untrue but held, contrary to the trial court, that it was not fraudulent or collusive. It also appears from the record in *Burke v. Kleiman* that the case was tried on an agreed statement of facts which raised only a single issue, whether by

reason of changes in the restricted area, the agreement had ceased to be ënforceable in equity.

"From this the Supreme Court of Illinois concluded in the present case that *Burke v. Kleiman* was a 'class' or 'representative' suit and that in such a suit 'where the remedy is pursued by a plaintiff who has the right to represent the class to which he belongs, other members of the class are bound by the results in the case unless it is reversed or set aside on direct proceedings'; [372 Ill. 369, 24 N. E. (2d) 39], that petitioners in the present suit were members of the class represented by the plaintiffs in the earlier suit and consequently were bound by its decree which had rendered the issue of performance of the condition precedent to the restrictive agreement *res judicata,* so far as petitioners are concerned. The court thought that the circumstance that the stipulation in the earlier suit that 95 per cent of the frontage owners had signed the agreement was contrary to the fact as found in the present suit did not militate against this conclusion since the court in the earlier suit had jurisdiction to determine the fact as between the parties before it and that its determination, because of the representative character of the suit, even though erroneous, was binding on petitioners until set aside by a direct attack on the first judgment."

Further, the court said:

"The restrictive agreement did not purport to create a joint obligation or liability. If valid and effective its promises were the several obligations of the signers and those claiming under them. The promises ran severally to every other signer. It is plain that in such circumstances all those alleged to be bound by the agreement would not constitute a single class in any litigation brought to enforce it. Those who sought to secure its benefits by enforcing it could not be said to be in the same class with or represent those whose interest was in resisting perform-

ance, for the agreement by its terms imposes obligations and confers rights on the owner of each plot of land who signs it. If those who thus seek to secure the benefits of the agreement were rightly regarded by the state Supreme Court as constituting a class, it is evident that those signers or their successors who are interested in challenging the validity of the agreement and resisting its performance are not of the same class in the sense that their interests are identical so that any group who had elected to enforce rights conferred by the agreement could be said to be acting in the interest of any others who were free to deny its obligation.

"Because of the dual and potentially conflicting interests of those who are putative parties to the agreement in compelling or resisting its performance, it is impossible to say, solely because they are parties to it, that any two of them are of the same class. Nor without more, and with the due regard for the protection of the rights of absent parties which due process exacts, can some be permitted to stand in judgment for all."

And further the court then said:

"It is one thing to say that some members of a class may represent other members in a litigation where the sole and common interest of the class in the litigation, is either to assert a common right or to challenge an asserted obligation. *Smith v. Swormstedt, supra; Supreme Tribe of Ben-Hur v. Cauble, supra; Groves v. Farmers State Bank,* 368 Ill. 35, 12 N. E. (2d) 618. It is quite another to hold that all those who are free alternatively either to assert rights or to challenge them are of a single class, so that any group merely because it is of the class so constituted, may be deemed adequately to represent any others of the class in litigating their interests in either alternative. Such a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even

probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires. The doctrine of representation of absent parties in a class suit has not hitherto been thought to go so far. See *Terry v. Bank of Cape Fear*, C. C., 20 F. 777, 781; *Weidenfeld v. Northern Pac. Ry. Co.*, 8 Cir., 129 F. 305, 310; *McQuillen v. National Cash Register Co.*, D. C., 22 F. Supp. 867, 873, affirmed, 4 Cir., 112 F. (2d) 877, 882; *Brenner v. Title Guarantee & Trust Co.*, 276 N. Y. 230, 11 N. E. (2d) 890, 114 A. L. R. 1010; cf. *Wabash R. R. Co. v. Adelbert College*, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; *Coe v. Armour Fertilizer Works*, 237 U. S. 413, 35 S. Ct. 625, 59 L. Ed. 1027. Apart from the opportunities it would afford for the fraudulent and collusive sacrifice of the rights of absent parties, we think that the representation in this case no more satisfies the requirements of due process than a trial by a judicial officer who is in such situation that he may have an interest in the outcome of the litigation in conflict with that of the litigants. *Tumey v. Ohio*, 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A. L. R. 1243.''

The questions that are involved in the instant case are somewhat similar to the facts as they are related in the opinion of the court in *Hansberry v. Lee*, 61 S. Ct. 115, so that it will be necessary to apply the reasoning of the Supreme Court of the United States in the instant case. We find from an inspection of the questions that are involved that the defendants have suggested that the extension agreements that were entered into by the plaintiff have a binding force upon the question that this restrictive agreement runs with the land and is binding upon the mortgagee, and that, in some way, the plaintiff became estopped to assert that the restrictive agreement is not binding upon it, as a mortgagee who did not sign the agreement or consent thereto, because after the recording of the

agreement, the plaintiff extended the time of payment of the mortgage debt. The plaintiff urges that in the absence of a detriment suffered by defendants, by reason of plaintiff's failure to act, there can be no estoppel. From this record there is not one word that the defendants have done or failed to do anything in reliance upon the plaintiff's omission to foreclose in 1932 or 1936, or in reliance upon its having become, by some implication, a party to the restrictive agreement. It has been well said by the plaintiff that the extension agreements were exactly what the term implies—simple agreements whereby the time of payment of the mortgage debt was extended upon the original security without any release of the original mortgage, taking of a new one, or renewal of the mortgage notes. The extension of the time of payment of a mortgage in no way impairs the mortgage lien as against subsequent incumbrancers or as against any other parties subsequently dealing with the title.

The trial court had before it the question as to whether the plaintiff was bound by this restrictive agreement by the fact of previous adjudications of its validity, and whether plaintiff, having signed the extension agreements which were recorded, is bound by the restrictive agreement which had been signed by Emma W. Meschke and her husband, August F. Meschke, predecessors in title. The decree that was entered in the *Hansberry v. Lee (supra)* case was in a class action wherein the court passed upon the questions that were before it, and the Supreme Court of the United States used this language with reference to the restrictive agreement:

"The restrictive agreement did not purport to create a joint obligation or liability. If valid and effective its promises were the several obligations of the signers and those claiming under them. The promises ran severally to every other signer. It is plain that in such circumstances all those alleged to be bound by

the agreement would not constitute a single class in any litigation brought to enforce it.'' This having been regarded by the State of Illinois Supreme Court as a class litigation and that the restrictive agreement by its terms imposes obligations and confers rights on the owner of each plot of land who signs it, if those seeking to obtain the benefits of the agreement were rightly so regarded by the State Supreme Court as constituting a class, it is evident from what was said in *Hansberry v. Lee, supra,* that ''those signers or their successors who are interested in challenging the validity of the agreement and resisting its performance are not of the same class in the sense that their interests are identical so that any group who had elected to enforce rights conferred by the agreement could be said to be acting in the interest of any others who were free to deny its obligation.''

When we come to consider the questions as they are involved in the present litigation, we find that the defendants cite as authorities the cases of *Burke v. Kleiman,* 277 Ill. App. 519, wherein the decree was entered on October 2, 1933, and the case of *Penoyer v. Cohn,* wherein the decree was entered in the superior court of Cook county on May 5, 1938, both of which cases were—as the court by its opinion ruled that they were—class actions. The case of *Lee v. Hansberry,* 372 Ill. 369, also is cited, in which the Supreme Court of Illinois construed this very agreement and held it to be in full force and effect, as a class or representative one. The Supreme Court of the United States in *Hansberry v. Lee,* 61 S. Ct. 115, indicated that the litigation is not in the nature of a class action, and that the parties, so far as their rights were concerned, had a several and not a joint right which they could assert, and that the members of the class who were parties to the restrictive agreement, but who were not before the court, were deprived of the due process of

law as guarantied under the fourteenth amendment to the Constitution of the United States.

Under the facts and the law, as we have indicated, we are of the opinion that the court by its foreclosure decree properly entered this decretal order and that it is not subject to error. The action of the trial court is, therefore, affirmed.

*Affirmed.*

DENIS E. SULLIVAN and BURKE, JJ., concur.